PER CURIAM.
[, Granted. The trial court’s judgment granting defendant’s motion to suppress evidence is reversed and this case is remanded for further proceedings.
Testimony at the hearing on the motion to suppress from Trooper Todd Cummings of the Louisiana State Police established that on the evening of April 13, 2012, Sergeant Chris Jordan received a tip from the unnamed informant, not previously known to the police, identifying defendant by name and advising that defendant was en route to Lake Providence by bus from the Dallas Fort Worth area with substantial amounts of marijuana and cocaine in his possession and would be arriving in Monroe, an intermediate stop on the bus route, later that night, where he would be picked up by a Jeffrey Carter (presumably a .relation) and driven on to Lake Providence. Defendant would need the ride because Lake Providence is approximately 70 miles from Monroe, the closest stop on the bus route. Sergeant Jordan contacted Greyhound and verified that a bus was en route from Dallas' and would stop in Monroe later that night. Jordan then got on his computer and determined that a Charles Carter lives in Lake Providence and that he had a prior record for burglary and narcotics trafficking. Jordan |2printed out a picture of defendant from his database and the officers headed for the Greyhound bus station in Monroe. Trooper Cummings spoke with the terminal manager and determined that a bus from Texas was en route, but was running some two hours late. Cummings had also arranged for backup units on the scene, including a canine unit with a drug detection dog.
The officers established a surveillance of the station and waited for the bus to arrive. In the interim, the officers ran the plate numbers of the vehicles parked on the lot but apparently did not find anything of significance. When the bus finally pulled into the station, defendant stepped out carrying a soft vinyl bag and began scanning the parking lot as if looking for someone. Jordan immediately identified defendant from the picture he had with him and he used his cellular phone to take another picture, which he then transmitted to his informant, who replied and confirmed defendant’s identity. When defendant began walking through the parking lot as if he were about to leave, the officers moved in to detain him. Trooper Cummings took defendant to the ground when it appeared that he was about to bolt and Sergeant Jordan then removed the vinyl bag from defendant’s hand. Jordan immediately felt the outline of a small handgun through the soft vinyl bag and so informed Trooper Cummings, who promptly handcuffed defendant to secure him. Jordan opened the bag and found the handgun inside a smaller shaving kit together with a mix of crack and powder cocaine. The officers immediately arrested defendant *310 for possession of the hand gun (as a previously convicted felon)[1] and the cocaine, and transported him to the stationhouse for booking. Events had unfolded so rapidly that the officers did not take the opportunity to have the drug | ..¡detection dog take a sniff of the vinyl bag on the scene. The sniff took place later at the station-house and evidently confirmed what the officers already knew with respect to the cocaine retrieved from the vinyl bag.
In ruling on the motion to suppress, the trial court acknowledged that a tip provided by a first-time informant with no known track record of reliability may provide reasonable suspicion for an investigatory stop when it is sufficiently predictive of the individual’s future conduct, as determined by the ensuing police investigation. Under the particular circumstances of a given case, the police may reasonably assume that “because an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity.” Alabama v. White, 496 U.S. 325, 331, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990) (discussing Illinois v. Gates, 462 U.S. 213, 244, 103 S.Ct. 2317, 2335, 76 L.Ed.2d 527 (1983)). The trial court found, however, that all defendant did to bear out the informant’s predictions in the present case was to “get on the bus,” which was not a prediction of future conduct but a statement of fact at the time, and then get off at the intermediate Monroe stop. That much of the tip was predictive. See, e.g., United States v. Walker, 7 F.3d 26, 30 (2nd Cir.1993) (“[T]he tip predicted that Walker would be traveling on a train from the south and that he would arrive in New York City. While it may not have contained as much ‘predictive’ information as the tips in White and Gates, the district court concluded that the caller ‘knew enough about the defendant’s activities to know that he would get off in New York rather than at another stop.’”) (citation omitted). On the other hand, the informant in the present case was evidently wrong that Jeffery Carter would be waiting for defendant in the 14parking lot of the bus terminal to transport him to Lake Providence by car. That much of the tip did not appear reliably predictive.
Under these circumstances, the court declined to subscribe to the general proposition that “[bjecause only a small number of people are generally privy to an individual’s itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual’s illegal activities.” White, 496 U.S. at 332, 110 S.Ct. at 2417. The trial court thus concluded the police lacked reasonable suspicion to detain defendant. The court further found that, even assuming the troopers had reasonable suspicion to stop defendant, they had no particularized concerns for their safety and could not lawfully seize the vinyl bag from defendant’s hand in a self-protective “frisk” for weapons. The court of appeal found no error in the trial court’s ruling. State v. Carter, 48,559 (La.App. 2 Cir. 8/8/13) (“To the extent that the officers were able to corroborate the predictive information provided by an anonymous caller, the information was insufficient to establish that the information was reliable.”).
The trial court’s assessment of the circumstances surrounding the recovery of the evidence in this case failed, however, to account for another significant factor bearing on the credibility of the informant and the reliability of his information. See *311 White, 496 U.S. at 330, 110 S.Ct. at 2416 (“Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors — quantity and quality — are considered in the ‘totality of the circumstances — the whole picture,’ United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), that must be taken into account when evaluating whether there is reasonable suspicion”). The |¡¡informant did not merely provide the police with accurate information regarding the suspect’s name and his intended destination via the intermediate stop in Monroe, and then disappear into the night. The informant continued to stay in contact with the police as they acted immediately on the basis of the information he (or she) provided. Thus, when Sergeant Jordan took the cellular picture of defendant as he stepped from the bus in the Monroe Greyhound terminal and transmitted it, the informant immediately responded and confirmed defendant’s identity. The informant’s willingness to stay in contact with the police during the investigation offered additional assurance he was passing on trustworthy information and not just rumor or speculation, or worse, that might cause him trouble if the police found they were chasing after bad information. See Florida v. J.L., 529 U.S. 266, 276, 120 S.Ct. 1375, 1381, 146 L.Ed.2d 254 (2000) (Kennedy, J., concurring) (“Instant caller identification is widely available to police, and, if anonymous tips are proving unreliable and distracting to police, squad cars can be sent within seconds to the location of the telephone used by the informant.... It is unlawful to make false reports to the police ... and the ability of the police to trace the identity of anonymous telephone informants may be a factor which lends reliability to what, years earlier, might have been considered unreliable anonymous tips.”); see also State v. Elliott, 09-1727, p. 7 (La.3/16/10), 35 So.3d 247, 252 (reliability of 911 call demonstrated by willingness of the caller to “hold[ ] herself accountable for the information she provided by identifying herself, if not by name, then by the cellular phone from which she was calling.”) (citing J.L., 529 U.S. at 276, 120 S.Ct. at 1381 (Kennedy, J., concurring)).
| ^As for the absent Jeffery Carter, the missing element from the informant’s prediction, the police could reasonably conclude that the late arrival of the bus, two hours behind schedule, had disrupted defendant’s plans for the car ride to Lake Providence. Under all of the circumstances known to them, the police had reasonable suspicion, the requisite “minimal level of objective justification,” INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984), for conducting a brief investigatory detention of defendant “to maintain the status quo momentarily while obtaining more information.” State v. Fauria, 393 So.2d 688, 690 (La.1981); see White, 496 U.S. at 330, 110 S.Ct. at 2416 (“Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than required to show probable cause.”). Given the nature of the informant’s tip, the police also had reasonable suspicion to detain defendant’s vinyl luggage, a likely repository for contraband drugs. United States v. Place, 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983) (“[W]hen an officer’s observations lead him reasonably to believe that a traveler is carrying luggage that contains narcotics, the principles of Terryi[v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 *312 (1968) ] and its progeny would permit the officer to detain the luggage briefly to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope.”)- That detention had barely occurred when Sergeant Jordan felt the outline of a handgun inside the bag. The officer acted reasonably in opening the bag and searching it to retrieve the gun, thereby also bringing into plain view the' mix of crack and powdered 17cocaine, not only in a self-protective search to secure the weapon, based on “an articulable suspicion that the suspect is potentially dangerous,” while conducting an investigatory stop, see Michigan v. Long, 463 U.S. 1032, 1052, n.16, 463 U.S. 1032, 103 S.Ct. 3469, 3482, 77 L.Ed.2d 1201 (1983), but also in a search incident to a formal arrest that would occur moments later on probable cause that defendant, a previously convicted felon, was in possession of a firearm, in violation of La.R.S. 14:95.1, as well as the contraband drugs. Rawlings v. Kentucky, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980) (“Where the formal arrest followed quickly on the heels of the challenged search of petitioner’s person, we do not believe it particularly important that the search preceded the arrest rather than vice versa.”); State v. Melton, 412 So.2d 1065, 1068 (La.1982) (“When there is probable cause but no formal arrest, a limited search to preserve evidence is justified.”) (citing Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973)).
REVERSED AND REMANDED.
KNOLL, J., dissents with reasons.
HUGHES, J., would deny.

. The state has charged defendant with a violation of La.R.S. 14:95.1, convicted felon in possession of a firearm, on the basis of his prior conviction in 2003 for simple burglary.