*249
 
 GUIDRY, Justice.
 
 *
 

 | ]At issue in this prosecution for operating a vehicle while intoxicated is whether a 911 call placed by occupants of a vehicle following the defendant, and reporting traffic violations, can suffice to provide probable cause or reasonable suspicion to stop the defendant. Following a hearing, the district court granted the defendant’s motion to suppress “all evidence discovered as a result of [the] initial approach and subsequent seizure of Mr. Elliott [by the police].” The State sought review in the court of appeal, which found no error in the district court’s ruling. We granted certiorari in this matter to address the correctness of the district court ruling.
 

 Upon review, we find the district court erred in granting the defense motion to suppress. The determination of whether probable cause exists for an arrest or reasonable suspicion for an investigatory stop is a purely objective inquiry that takes into account all of the information known collectively by the law enforcement personnel involved in the investigation even if some of the information is not communicated to the arresting officer. The information conveyed to the dispatcher from the citizen informants expressly described traffic violations as they occurred, providing the requisite indicia of reliability to justify a stop based on reasonable suspicion. Therefore, for the reasons that follow, we reverse the district court’s ruling ^granting the defendant’s motion to suppress and remand the case to the district court for further proceedings.
 

 FACTS
 

 At the suppression hearing, Daron Hart-vigsen testified that on December 25, 2007, at approximately 6:30 p.m., he and his wife and child were in their vehicle turning from Greenacres Boulevard onto Airline Drive in Bossier Parish, when defendant’s dark colored Ford Ranger ran a red light at the intersection and nearly collided with the passenger side of the Hartvigsen vehicle. He testified his wife screamed, and he slammed on his brakes to avoid an accident. Hartvigsen stated that he then started heading north, following the taillights of the truck that almost hit them. He observed the truck swerve left of the center line and stated it “was going all over the road.” Hartvigsen observed the vehicle hit the right curb and stated that as it approached Wemple Road and a red light, it almost crashed into a car. Near this time, Ms. Hartvigsen used her cellular telephone to call 911 and began relaying the events verbatim to the dispatcher as they continued their pursuit of the erratic driver. Eventually, local police from the Benton Police Department, acting on a dispatcher report from the Bossier Parish Sheriffs Office, stopped the defendant, Trey Daniel Elliott. The Hartvigsens pulled over behind the officer and remained on the scene. Mr. Hartvigsen identified the defendant in court as the person driving the Ford Ranger.
 

 On cross examination, Mr. Hartvigsen stated that neither he nor his wife have ever been confidential informants for the police department or provided information to the sheriffs department which formed the basis for a search warrant or an arrest warrant.
 

 |sThe State and defense stipulated to the admission of the police reports. In the police report from the Bossier Parish Sheriffs Department, Deputy Mark Lyons stated that he was dispatched to investigate someone driving a dark colored Ford Ranger, traveling north on Airline Drive, that almost hit two vehicles while running red lights at two separate intersections.
 
 *250
 
 He became aware soon thereafter that a Benton Police Officer, Randall Matlock, was initiating a traffic stop on the suspect vehicle at Palmetto Road and Bellvue Road. Upon arriving at the scene, Deputy Lyons met with Mr. Hartvigsen who recited the events from his first contact with the defendant to that moment, adding that the vehicle was traveling at a high rate of speed and had nearly collided with several other vehicles. The report further provided that Mr. Hartvigsen told Deputy Lyons that he stayed on the phone with the 911 dispatcher as he followed the suspect vehicle.
 
 [1]
 

 PROCEDURAL HISTORY
 

 The defendant was charged by bill of information with one count of operating a motor vehicle while intoxicated in violation of Louisiana Revised Statute “14:98-1,”
 
 [2]
 
 one count of careless operation of a motor vehicle in violation of Louisiana Revised Statute 32:58, and two counts of failing to observe and stop for a traffic control signal in violation of Louisiana Revised Statute 32:282. Following arraignment and assignment of the case, the defense filed a motion to suppress.
 

 In the memorandum in support of the motion to suppress, the defense argued that at the time of the stop, the officer making the stop lacked reasonable suspicion 14or belief that the defendant had committed, was in the process of committing, or was about to commit a crime. The defense further argued that because the officer making the stop had not observed any type of violation of statute or traffic regulation, the only information he had was that a dark colored Ford Ranger was headed north down Palmetto Street and the Sheriffs Department was looking for it. He had no information concerning the credibility and reliability of the person claiming the defendant was driving erratically. Therefore, the defense argued that the stop was not made upon reasonable suspicion as required by Louisiana Code of Criminal Procedure article 215.1. The defense contended that at the moment the officer initiated the stop by turning on the blue lights, he must have had independent knowledge of a crime having been committed unless he knows the source of the information and its established reliability. Defense counsel argued that anything which might have taken place after the stop with respect to any interaction between the arresting officers and the Hart-vigsens had no relevance to the question of whether the police officer making the stop had the requisite reasonable suspicion to stop the vehicle.
 

 The district court proceeded with the hearing on the motion to suppress. Mr. Hartvigsen testified, and the parties stipulated to the admission of the police reports. Following argument, the district court took the matter under advisement. Subsequently, the district court granted the motion to suppress all evidence obtained from the moment the officer first proceeded to stop the defendant. The court reasoned that after reviewing the
 
 *251
 
 jurisprudence relating to anonymous tips, the “anonymous call” alone was insufficient to justify the stop in this case where the officer making the stop had no knowledge of the credibility or reliability of the informant and had not observed any erratic driving or other traffic violations.
 

 IsThe State sought writs from the court of appeal contending the district court improperly determined that the patrol officer lacked reasonable suspicion to make an investigative stop of the defendant. The court of appeal denied the State’s writ application. The court of appeal reasoned that, because the officer that stopped the defendant did not independently observe any criminal activity or driving violations, and had no information to assess reliability, there was no showing that the reporting witnesses were citizen informants, and there is no apparent public safety issue, the investigatory stop was not justified.
 
 State v. Elliott,
 
 unpub., 44,807 (La. App 2 Cir. 6/25/09).
 

 This Court granted the State’s application for certiorari to review the correctness of the district court’s action regarding the validity of the investigatory stop of the defendant.
 
 State v. Elliot,
 
 09-1727 (La.11/20/09), 25 So.3d 781.
 

 LAW
 

 The determination of whether probable cause exists for an arrest or reasonable suspicion for an investigatory stop is a purely objective inquiry that takes into account “all of the information known collectively to the law enforcement personnel involved in the investigation.”
 
 State v. Landry,
 
 98-3008, p. 5 (La.1/8/99), 729 So.2d 1019, 1022 (citing
 
 United States v. Klein,
 
 93 F.3d 698, 701 (10th Cir.1996) (“Probable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest.”));
 
 United States v. Butler,
 
 74 F.3d 916, 921 (9th Cir.1996) (“Probable cause can also be demonstrated through the collective knowledge of police officers involved in an investigation, even if some of the information known to other officers is not communicated to the arresting officer.”). Thus, the arresting officer need not have talked to the informants or had any knowledge of their reliability to act on a report from the police dispatcher relying |fiupon information supplied by a witness, provided that the information conveyed to the dispatcher had the requisite indicia of reliability to justify a stop based on reasonable suspicion.
 

 We are aware that a growing number of jurisdictions have concluded that drunken or erratic driving presents such an immediate risk of public safety that it constitutes an exception to the general rule of
 
 Florida v. J.L.,
 
 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), that police may not act on anonymous tips unless they corroborate them in sufficient detail.
 
 See Virginia v. Harris,
 
 — U.S. —, 130 S.Ct. 10, 175 L.Ed.2d 322 (2009) (Roberts, C.J., dissenting from the denial of certiora-ri) (“The majority of courts examining the question have upheld investigative stops of allegedly drunk or erratic driver, even when the police did not personally witness any traffic violations before conducting the stops.... A minority of jurisdictions, meanwhile, take the same position as the Virginia Supreme Court, requiring that officers first confirm an anonymous tip of drunk or erratic driving through their own independent observation.”);
 
 see also Cottrell v. State,
 
 971 So.2d 735, 745 (Ala.Crim.App.2006) (“We now join our sister states of Vermont, Iowa, Wisconsin, South Dakota, New Jersey, New Hampshire, Hawaii, Delaware, and Kansas, and hold that an anonymous tip concerning a potential drunk driver may be sufficiently reliable to justify a
 
 Terry [v. Ohio,
 
 392 U.S. 1, 88
 
 *252
 
 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] stop without independent corroboration by the police.”);
 
 State v. Sousa,
 
 151 N.H. 297, 855 A.2d 1284, 1288 (2004) (“Since
 
 J.L.
 
 a few intermediate state appellate courts have concluded that anonymous tips of drunk or erratic driving are unreliable, requiring police corroboration of the tip’s incriminating details. By contrast, every state court of last resort that has directly addressed the issue has concluded that, in a drunk or erratic driving case, certain tips are sufficiently reliable and detailed, when viewed in the totality of the circumstances, to establish reasonable suspicion.”) (citations omitted).
 

 DISCUSSION
 

 In resolving this case, however, we need not address the jurisprudence holding that an anonymous tip concerning a potential drunk driver may be sufficiently reliable to justify a
 
 Terry
 
 stop without independent corroboration by the police. In the present case, the witnesses were clearly citizen informants providing information about a crime as it was happening and not anonymous tipsters. As recounted by Mr. Hartvigsen, who appeared and testified at the suppression hearing, following the near-collision with defendant’s vehicle, his wife provided a “verbatim account” of their pursuit as it occurred to the 911 dispatcher over her cellular phone. The dispatcher could reasonably infer from the circumstances that the caller was motivated by the desire to eliminate an immediate risk to public safety and was holding herself accountable for the information she provided by identifying herself, if not by name, then by the cellular phone from which she was calling.
 
 See
 
 Louisiana Revised Statute 33:9109(A) (“These enhancements will automatically provide the number and location of the wireless caller to the communications district when a caller accesses 911.... [I]t is in the public interest to automatically provide a wireless caller’s telephone number when such a caller requests emergency services by calling the 911 telephone number.”);
 
 cf. J.L.,
 
 529 U.S. at 276, 120 S.Ct. at 1381 (Kennedy, J., concurring) (“Instant caller identification is widely available to the police ... and the ability of the police to trace the identity of anonymous telephone informants may be a factor which lends reliability to what, years earlier, might have been considered unreliable anonymous tips.”).
 

 | ^CONCLUSION
 

 The information conveyed to the dispatcher provided reasonable suspicion to stop the defendant’s vehicle because it expressly described traffic violations as they occurred when the defendant ran at least one red light, almost hitting the Hartvigsens, swerved left over the center line, hit the right curb, and nearly collided into another automobile. Nothing that occurred after the stop undercut the inference that the informants were credible and their information reliable, as the witnesses pulled in behind the patrol vehicle and continued to make themselves available to the police and accountable for the information they had provided.
 

 DECREE
 

 For the reasons stated herein, the trial court’s ruling on the motion to suppress is reversed. The case is remanded to the district court for further proceedings consistent with the views expressed herein.
 

 DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED TO THE DISTRICT COURT.
 

 *
 

 Kimball, C.J., did not participate in the deliberation of this opinion.
 

 [1]
 

 . The exhibits filed with the district court record in this Court only contained part of the report by Deputy Lyons. The appellate record contained a full copy of the report which was stipulated to by both the State and the defense.
 

 [2]
 

 . We note that the bill of information states that defendant was in violation of "LRS 14:98-1.” It is unclear whether the reference is to La. R.S. 14:98, operating a vehicle while intoxicated, first offense, or La. R.S. 14:98.1, underage driving under the influence, since the defendant was underage at the time of the offense. However, the issue before the Court relates only to the validity of the stop. Therefore, more precise information regarding the charged offense is not necessary to our consideration of the issue.