JOHNSON, J.
Defendant, T.L., appeals his delinquency adjudications for possession of a handgun by a juvenile and revocation of his probation from the Juvenile Court for the Parish of Jefferson, Section "B".[1] For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On March 23, 2015, the Jefferson Parish District Attorney filed a petition in juvenile court alleging that the juvenile, T.L., possessed marijuana in violation of La. R.S. 40:966(C). The juvenile denied the allegations of the petition on that same date. On May 13, 2015, the hearing on the petition was continued without date, and the juvenile entered into the Diversion Program.
On February 24, 2016, the Jefferson Parish District Attorney filed a petition in juvenile court alleging that the juvenile obstructed or interfered with members of the staff, faculty, or students of educational institutions in violation of La. R.S. 14:328(B) (petition "A"). On March 30, 2016, the State amended petition "A" to simple battery on a minor child in violation of La. R.S. 14:35, and the juvenile admitted the allegations.[2] The disposition hearing for the simple battery adjudication was set for May 5, 2016. On May 5, 2016, the judge committed the juvenile to the Office of Juvenile Justice (hereinafter referred to as "OJJ") for six months or until his 21st *316 birthday, whichever was sooner, suspended the sentence, and placed the juvenile on active and intensive probation for two years.
On July 18, 2017, the Jefferson Parish District Attorney filed a petition in juvenile court alleging that the juvenile violated La. R.S. 14:95.8 by committing the offense of illegal possession of a handgun by a juvenile (counts one and two) (petitions "C" and "D").[3] The juvenile denied the allegations of those petitions on that same date. On August 7, 2017, the juvenile filed omnibus motions, including a Motion to Suppress Evidence, Statement, and Identification. On August 16, 2017, the judge held the suppression and the adjudication hearings at the same time. Afterwards, on that same date, the judge denied the Motion to Suppress Evidence and Statement, finding that there was no illegal stop by the officer and that there was no statement taken by the police.
Deputy Galvin Livers of the Jefferson Parish Sheriff's Office ("JPSO") testified at the suppression/adjudication hearing that on July 11, 2017, at nighttime, he and Deputy Andre Nelson were dispatched "to a reported gunfire." Deputy Livers explained that an anonymous complainant advised them that he observed occupants of a four-door silver vehicle discharging firearms while the vehicle was in motion in the area of Bent Tree Boulevard and Leo Kerner Parkway. Deputy Livers also explained that he heard Deputy Nelson "put out a traffic stop of a silver four-door vehicle," and that he responded to Deputy Nelson. He asserted that once he arrived on the scene, he removed the driver from the vehicle and spoke with him afterward. He further asserted that he advised the driver that they were there because gunshots were heard in the area and that the reporting person described the vehicle as a silver four-door vehicle, which matched the vehicle that he pulled over. Deputy Livers testified that he asked the driver for permission to search the vehicle for any contraband that would be associated with that crime and that he received verbal consent from the driver to do so.
Deputy Livers noted that he subsequently conducted a search of the vehicle but did not locate anything in the front passenger compartment. He stated that upon going to the rear passenger compartment, he conducted a search of the floorboard but did not find anything. Deputy Livers testified that upon exiting the backseat of the vehicle on the rear passenger side, he noticed that the padding in the backseat was "loose from the rest of the vehicle." He explained that he lifted it up and observed two firearms underneath the seat, one silver and one black. Deputy Livers asserted that the whole seat was removable and that it took very minimal force to lift it up. He stated that the seat was removed from the vehicle once they discovered the evidence.
Deputy Livers testified that he discovered a Bersa model .380 handgun when he lifted up the seat. He also testified that he discovered a Ruger model handgun under the backseat of the vehicle as well. Deputy Livers submitted that one of the firearms was located directly under the rear driver's-side seat and that the other firearm was located closer to the middle of the vehicle in the backseat. He noted that they *317 were approximately six inches from each other.
Deputy Livers testified that the entire seat was removable from the vehicle and that the padding and the fabric of the seat were removable from the metal underneath. He stated that the whole seat could be taken out and that there was a compartment underneath. Deputy Livers did not know if those firearms had ammunition in them when he found them. He maintained that he brought the firearms to Deputy Nelson and that Deputy Nelson handled them afterward. Deputy Livers noted that there was nothing else in the compartment. He testified that if there was weight on top of the firearms, they would not have been able to move if the car had turned sharply. He later testified that he would not describe the place he found the guns as a "compartment" or a storage space. He explained that the area where the guns were found was a flat surface with padding sitting on top of it. Deputy Livers stated that it was easy to tuck items underneath it.
Deputy Livers positively identified the juvenile in court as one of the passengers in that vehicle. He did not know where the juvenile was sitting in that vehicle. Deputy Livers asserted that he was not there for the initial stop of the car. He testified that when he arrived on the scene, he asked the driver, Guy Robinson, to step out of the vehicle and that everybody else in the vehicle was also asked to step out. He said that there were four individuals in that vehicle.
Deputy Livers testified that neither he nor Deputy Nelson obtained a signed consent to search the car. He stated that he did not have a warrant to search the vehicle and that he did not observe any weapons in plain view. Deputy Livers maintained that there were no other officers present other than him and Deputy Nelson. He did not take photographs of the guns that he found. Deputy Livers asserted that he did not participate in taking any statements from the other two passengers or the driver. He explained that he searched the vehicle because it matched the description of the vehicle they were looking for. They also searched the vehicle because there were reported gunshots fired in the area, and there was the possibility of evidence being located in the vehicle.
JPSO Deputy Andre Nelson Jr. testified at the suppression/adjudication hearing that on July 11, 2017, they received an anonymous call from an individual who heard multiple gunshots in the area "between Ames and Barataria all the way to approximately East Ames and Ames" in Jefferson Parish and that individual observed a four-door silver vehicle fleeing the area. Deputy Nelson asserted that after he received that report, he began to patrol the area for that vehicle. He stated that approximately one minute later, he observed a silver four-door vehicle leaving the intersection of Barataria Boulevard and Leo Kerner turning toward Ames. At that time, Deputy Nelson conducted an investigatory stop since it was nighttime and the only vehicle he saw on the road "was that vehicle." He did not know the exact time but recalled that it was very dark, the streetlights were on, and it was "almost close to morning hours."
Deputy Nelson stated that the vehicle turned into the Brother's Food Mart located at Barataria and Ames. He ordered the driver out of the vehicle and explained to the driver why he was stopped. Deputy Nelson noticed that there were three other occupants in the vehicle. He testified that when Deputy Livers arrived to assist, they asked the other occupants to exit the vehicle for officer safety. He explained that this was done since the investigatory stop *318 was based on gunshots and potential weapons in the vehicle. Deputy Nelson stated that during the stop, he observed a backseat passenger, who was later identified as the juvenile, leaning toward the floorboard of the vehicle. He further stated that the juvenile was in the backseat on the driver's side. Deputy Nelson explained that the juvenile's action of leaning toward the floorboard was enough to alert him that the juvenile might have something in his possession.
Deputy Nelson testified that after he got everyone out of the vehicle, he began to identify everyone. In the process of doing so, Deputy Livers came to assist him. They asked the driver if he would allow them to search the vehicle since they were investigating it for potential weapons. Deputy Nelson testified that the driver complied. He stated that after he spoke to the driver, he conducted a background check of each individual. Deputy Nelson asserted that Deputy Livers then conducted a search of the vehicle. He recalled that during the search, Deputy Livers came and informed him, so as not to alert anyone, that he had found two firearms in the vehicle.
Deputy Nelson testified that they subsequently handcuffed everyone, read everyone their rights, and placed them into the police vehicles. He recalled that he placed the juvenile and the other backseat occupant in the backseat of his vehicle and that Deputy Livers placed the driver in his vehicle. During the background checks, Deputy Nelson noticed that the driver and the other backseat passenger were on probation. Deputy Nelson testified that the other backseat occupant told him that he was on probation and that the firearms were not his. He stated that the juvenile then spontaneously told him that both of the "hammers" were his. Deputy Nelson stated that "hammers" was a street slang term used to identify firearms.
Deputy Nelson explained that the juvenile was "upset," "irritated," and "very angry" because the investigation was not going fast enough and Deputy Nelson did not immediately believe his story. He testified that after several times of telling him that the firearms were his, the juvenile continued to ask why he was being arrested. Deputy Nelson told the juvenile to relax, and the juvenile told him that the other occupants were his relatives. He testified that he did not ask the juvenile to sign a waiver of his rights because he was not questioning the juvenile or asking him anything pertaining to the investigation until his parent could be present. However, Deputy Nelson stated that the juvenile never gave them any information regarding who his mother or guardian was.
At the conclusion of the hearing, the judge then adjudicated the juvenile delinquent as to two counts of illegal possession of a handgun by a juvenile and ordered a pre-disposition investigation (PDI).
On August 22, 2017, the probation officer filed a "Motion to Modify Judgment of Disposition Revocation of Probation." On September 7, 2017, after a hearing, the judge committed the juvenile to the OJJ for six months each on the offenses in petitions "C" and "D" to run concurrently with each other and consecutively with the disposition in petition "A." On that same date, after a hearing, the judge revoked the juvenile's probation, adjudicated the juvenile delinquent as charged, and imposed the previously suspended disposition of six months to the OJJ (petition "A"). On September 15, 2017, the juvenile filed a Motion for Appeal that was granted on September 18, 2017.
ASSIGNMENTS OF ERROR
On appeal, the juvenile alleges: 1) there was insufficient evidence to support the *319 delinquency adjudication; 2) the stop and the search of the vehicle were illegal; 3) the juvenile court judge erred in failing to grant his motion to suppress statement; and 4) the juvenile court judge erred in revoking his probation based upon delinquency adjudications that are not supported by sufficient evidence.
LAW AND ANALYSIS
Sufficiency of the Evidence
The juvenile argues that the evidence was insufficient to support the delinquency adjudications. He asserts that the handgun must be on the juvenile's person in order to sustain an adjudication of delinquency for illegal possession of a firearm by a juvenile, but that in the instant case, the officer never observed the weapons on the juvenile's person. The juvenile notes that there was no registration check on the guns, no fingerprint or DNA testing done on the guns, and no testimony by either officer or anyone in the car that the juvenile was in actual possession of the guns. He also contends that a person may not be convicted on his uncorroborated statement and that the State failed to produce any corroborating evidence to show possession of the guns on T.L.'s person.
The State responds that the judge properly adjudicated T.L. delinquent of two counts of illegal possession of a handgun by a juvenile. It further responds that the juvenile admitted that he owned the firearms and that the circumstantial evidence showed that the only way the firearms could have gotten into the car was on T.L.'s person. The State notes that the juvenile was seated on the cushion where the firearms were placed, concealed only by the foam padding. The State also notes that T.L. was observed furtively moving in an apparent attempt to hide the weapons.
The record reflects that after hearing the testimony and considering the other evidence presented at the adjudication hearing, the juvenile court judge adjudicated the juvenile delinquent as to two counts of illegal possession of a firearm by a juvenile, stating in pertinent part:
While this is a circumstantial case, it is very strong circumstantial case based on the facts of this situation. The deputy testified-in particular, Deputy Nelson testified-that within one minute or less of receiving the dispatch that shots had been fired in the exact area where he was, in the Barataria, Ames, Lafitte area, and that there was a four-door silver car fleeing the area.
And, again, within one minute or less, the deputies come upon the only car in the area, which is a four-door silver car. He sees four subjects in there. One of whom, the passenger driver's side person, makes a furtive move forward which caught his attention. Of course, in concern for officer safety based on the fact that this was a weapons call, weapons being fired from a vehicle, late at night, close to the morning hours, according to the testimony, I think he had every right in the world to pull that vehicle over for an investigatory stop.
And then we get to the part about removing the people from the vehicle. This defendant was behind the driver in the back seat driver's side. The seat, which is easily removed from the vehicle, reveals two weapons which have been placed into evidence. I've already ruled on their admissibility. And then we have the excited utterances of this defendant who not only once said that the hammers were his, but repeatedly told the officer in an irritated and angry way that the weapons were his and that he was annoyed that the officer was taking so long to complete his investigation *320 when, in fact, this defendant had already told him that the weapons were his.
The logical conclusion, even though possession of a firearm by a juvenile does require weapons to be on the person of the juvenile, the only logical conclusion is that this individual had the weapons in his possession when he got into the vehicle, when he moved them under the seat. And then, by his own admission, claiming that they were his. I find him guilty as charged.
In order for the court to adjudicate a child delinquent, the State must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. La. Ch.C. art. 883. The constitutional standard for testing the sufficiency of evidence in delinquency proceedings, as in criminal proceedings against an adult, requires that the evidence, direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt, in accord with Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State ex rel. D.W. , 09-855 (La. App. 5 Cir. 9/14/10); 47 So.3d 1048, 1053. In a juvenile delinquency proceeding, the State's burden of proof is the same as in a criminal proceeding against an adult, to prove beyond a reasonable doubt every element of the offense alleged in the petition. Id .
The rule as to circumstantial evidence is that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. This is not a separate test from the Jackson standard but rather provides a helpful basis for determining the existence of reasonable doubt. State v. Wooten , 99-181 (La. App. 5 Cir. 6/1/99); 738 So.2d 672, 675, writ denied , 99-2057 (La. 1/14/00); 753 So.2d 208. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Id.
In juvenile proceedings, the scope of review on appeal extends to both law and facts. See La. Const. Art. V, § 10 (B); State in the Interest of D.S. , 11-416 (La. App. 5 Cir. 12/28/11); 83 So.3d 1131, 1136. The "clearly wrong-manifest error" standard of review should be used to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt. Id. Although appellate review of juvenile cases extends to law and fact, the juvenile court judge observes the conduct and demeanor of the witnesses and is in a better position to determine credibility and weigh the evidence. Id. Thus, the appellate court should afford great deference to the judge's findings of fact and to the judge's determination of witness credibility and weight to be given their testimonies. Id. Appellate courts may not reverse findings of the trial court unless manifestly erroneous or clearly wrong. Id.
In the instant case, T.L. was adjudicated delinquent for illegal possession of a firearm by a juvenile on counts one and two, violations of La. R.S. 14:95.8. The statute states, "It is unlawful for any person who has not attained the age of seventeen years knowingly to possess any handgun on his person." La. R.S. 14:95.8(A). Pursuant to La. R.S. 14:95.8(A), an adjudication of a juvenile as delinquent for illegal possession of a handgun requires a finding that the juvenile had actual, not merely constructive, possession of a gun. State ex rel. C.M. , 13-128 (La. App. 5 Cir. 10/30/13); 128 So.3d 1118, 1125, writ *321 denied , 13-2796 (La. 5/30/14); 140 So.3d 1172.
"In the trial of every criminal case the State, to warrant a legal conviction of an accused, must prove the corpus delicti , or the fact that a crime has been committed. Without such proof no conviction will be permitted to stand." State v. Brown , 236 La. 562, 108 So.2d 233, 236 (La. 1959). An accused may not be convicted of a crime based solely on his own uncorroborated confession without some independent proof that a crime has been committed. The purpose behind this corroboration rule is to test the reliability of a defendant's confession. State v. Connolly , 96-1680 (La. 7/1/97); 700 So.2d 810, 820. The corpus delicti rule does not require that independent evidence corroborate every element of the crime admitted in the accused's statement, where its general reliability has been corroborated. Therefore, the corroborating evidence need only tend to show the major or essential harm involved in the offense charged and not all of the elements technically distinguished. State v. Schnyder , 06-29 (La. App. 5 Cir. 6/28/06); 937 So.2d 396, 401.
In the instant case, the juvenile admitted several times that he owned the firearms. Additionally, there is independent proof that crimes were committed. Deputy Livers testified that an anonymous complainant had advised them that in the area of Bent Tree Boulevard and Leo Kerner Parkway, he observed occupants of a four-door silver vehicle discharging firearms while the vehicle was in motion. Deputy Nelson testified that they received an anonymous call from an individual who heard multiple gunshots in the area "between Ames and Barataria all the way to approximately East Ames and Ames" in Jefferson Parish and that individual observed a four-door silver vehicle fleeing the area. He explained that after receiving the report, he began to patrol the area for that vehicle and that approximately one minute later, he observed a vehicle fitting that description in that area. He noted that it was late at night and that the only vehicle on the road was that four-door silver vehicle.
Deputy Nelson testified that during the stop of the vehicle, he observed a backseat passenger, later identified as the juvenile, leaning toward the floorboard of the vehicle. He further testified that the juvenile was in the backseat on the driver's side. Deputy Nelson asserted that the juvenile's action of leaning toward the floorboard was enough to alert him that the juvenile might have something in his possession.[4]
Deputy Livers testified that during the search of the vehicle, he noticed that the padding in the backseat was loose. When he lifted the seat up, he discovered two firearms. Deputy Livers explained that the whole seat was removable and that it took very minimal force to lift it up. He stated that one of the firearms was located directly under the rear driver's-side seat and that the other firearm was located closer to the middle of the vehicle in the backseat approximately six inches from the other one. Additionally, Deputy Nelson indicated that T.L. was a juvenile.
In light of the foregoing, we find that a rational trier of fact could have found that the evidence was sufficient under the Jackson standard to support the adjudications *322 of delinquency of two counts of illegal possession of a firearm by a juvenile.
Validity of Stop and Search
The juvenile argues that the stop of the automobile was invalid since the officers offered no corroboration of the anonymous tip so as to establish its reliability. He further argues that there was nothing in the record to establish that the consent to search the vehicle was voluntary. The juvenile asserts that the driver, who allegedly gave his consent, did not testify, there was no written consent form offered into evidence, and the driver of the car was being detained in what appeared to be coercive circumstances. He also asserts that the judge ruled that the driver's statement to the officer allegedly giving consent was hearsay. The juvenile contends that jurisprudence supports his right to traverse the consent to search by the driver.
The State responds that jurisprudence has validated traffic stops based on anonymous tips which provided little more than the color and type of vehicle suspected of criminal activity, noting that in the instant case, the caller provided police with the color, type, number of car doors, and the car's expected location. It also responds that the circumstances suggested ongoing criminal activity and the threat of imminent harm to the public. The State contends that it is not required to produce the witnesses who consented to the search in order to show the consent was freely and voluntarily given and that the testimony of the officer alone was sufficient to prove the consent was valid. It further contends that police had cause to search the car without the owner's consent because they had reason to believe that the car contained firearms and/or evidence of a crime. The State asserts that the juvenile does not have standing to challenge the search because he has no proprietary interest in the backseat of Mr. Robinson's car.
On August 7, 2017, the juvenile filed omnibus motions, including a motion to suppress evidence. In that motion, the juvenile moved the court to suppress any and all evidence seized from him, his person, his vehicle, and/or place of residence by the police and sought to be used by the State at trial on the grounds that such evidence was unconstitutionally obtained.
At the suppression/adjudication hearing, defense counsel argued that the guns should be suppressed as fruit of the poisonous tree because the search of the car was unconstitutional. The juvenile court judge denied that motion, finding that the stop was constitutional. He found that the juvenile did not have the right to complain about whether or not the driver gave consent to search the car. Defense counsel said she had cases on point: United States v. Mosley , 454 F.3d 249 (3d Cir. 2006), which she said stated that a traffic stop constitutes a seizure of passengers when a vehicle is illegally stopped by the police; and Florida v. J.L. , 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), which she said stated that an anonymous tip was a constitutionally deficient basis for an investigatory detention. The judge responded that those cases were not applicable, stating:
I do not consider this to have been an illegal stop based on the circumstances and the time frame of this officer responding to what he believed could have been less than one minute to the actual call, and it was the only vehicle in the area, and it met the description of a four-door silver vehicle.
The judge noted defense counsel's objection.
Defense counsel then argued that the State did not present any non-hearsay evidence that there was actual consent to search the vehicle. She noted that the driver of the vehicle was not in court and that *323 there was no signed consent form. After hearing arguments of counsel, the judge denied the motion to suppress the evidence.
A trial court's denial of a motion to suppress is afforded great weight and will not be set aside unless the evidence clearly favors suppression. State v. Butler , 01-0907 (La. App. 5 Cir. 2/13/02); 812 So.2d 120, 124. In determining whether the ruling on a motion to suppress was correct, the court is not limited to the evidence adduced at the hearing on the motion, but may consider all pertinent evidence given at trial. State v. Washington , 00-1542 (La. App. 5 Cir. 2/14/01); 782 So.2d 639, 645, writ denied , 01-0940 (La. 2/8/02); 807 So.2d 859.
Stop of Vehicle
Both the Fourth Amendment to the Constitution of the United States and Article I, § 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. State v. Roche , 05-237 (La. App. 5 Cir. 4/25/06); 928 So.2d 761, 765, writ denied , 06-1566 (La. 1/8/07); 948 So.2d 120. Warrantless searches and seizures are unreasonable per se unless justified by one of the specific exceptions to the warrant requirement. Id.
In a hearing on a motion to suppress evidence seized without a warrant, the State bears the burden of proving that an exception to the warrant requirement applies. State v. Lane , 09-179 (La. App. 5 Cir. 9/29/09); 24 So.3d 920, 923, writ denied , 09-2360 (La. 5/21/10); 36 So.3d 226 (citing La. C.Cr.P. art. 703(D) ). In Terry v. Ohio , 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized the investigatory stop as an exception to the warrant requirement. State v. Sam , 08-220 (La. App. 5 Cir. 6/19/08); 988 So.2d 765, 769, writ denied , 08-1984 (La. 5/15/09); 8 So.3d 577. In Louisiana, a law enforcement officer may stop and question a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit a criminal offense. Id. ; La. C.Cr.P. art. 215.1(A).
To justify an investigatory stop, an officer must have reasonable suspicion of criminal activity. State v. Boss , 04-457 (La. App. 5 Cir. 10/26/04); 887 So.2d 581, 585. Reasonable suspicion, which is something less than probable cause to arrest, requires that police officers have sufficient knowledge of facts and circumstances to justify an infringement of the individual's right to be free from government interference. State v. Chauvin , 06-362 (La. App. 5 Cir. 10/31/06); 945 So.2d 752, 757-58. Absent reasonable suspicion, an investigatory stop is illegal and the evidence seized as a result is inadmissible. Boss , 887 So.2d at 585.
The determination of reasonable grounds for an investigatory stop does not rest on the officer's subjective beliefs or attitudes but is dependent on an objective evaluation of all the circumstances known to the officer at the time of his challenged action. Lane , 24 So.3d at 924. In determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or hunch, but to the specific reasonable inferences that he is entitled to draw from the facts in light of his experience. Sam , 988 So.2d at 769.
"An anonymous tip may provide probable cause for an arrest, Illinois v. Gates , 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), or reasonable suspicion for an investigatory stop, Alabama v. White , 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), if it accurately predicts future conduct in sufficient detail to support *324 a reasonable belief that the informant had reliable information regarding the suspect's illegal activity." State v. Smith , 00-1838 (La. 5/25/01); 785 So.2d 815, 816 (per curiam ). See also, Lane , 24 So.3d at 924 (citing Alabama v. White , supra ) ; Boss , 887 So.2d at 586 (citing Alabama v. White , supra ).
Predictive ability is not always necessary; a non-predictive tip coupled with police corroboration or independent police observation of suspicious activity can provide the police with the requisite reasonable suspicion to detain a suspect. State v. Triche , 03-149 (La. App. 5 Cir. 5/28/03); 848 So.2d 80, 85, writ denied , 03-1979 (La. 1/16/04); 864 So.2d 625. "[I]f a tip has a relatively low degree of reliability, more information will be required to establish the quantum of suspicion than would be required if the tip were more reliable." Alabama v. White , 496 U.S. at 330, 110 S.Ct. at 2416.
Whether an anonymous tip establishes reasonable suspicion to conduct an investigatory stop is considered under the totality of the circumstances. Boss , 887 So.2d at 586. The sufficiency of an anonymous tip under Terry is determined by the reliability of its assertion of illegality and not just its tendency to identify a determinate person. Id.
In Navarette v. California , --- U.S. ----, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014), cited by the State and the juvenile in their briefs, an officer stopped the truck occupied by petitioners because it matched the description of a vehicle that a 9-1-1 caller had recently reported as having run her off the road. As he and a second officer approached the truck, they smelled marijuana. They searched the truck's bed, found thirty pounds of marijuana, and arrested petitioners. Petitioners moved to suppress the evidence; however, their motion was denied, and the appellate court affirmed.
The Supreme Court in Navarette affirmed, holding that the stop complied with the Fourth Amendment because under the totality of the circumstances, the officer had reasonable suspicion that the driver was intoxicated. It asserted that the 9-1-1 call bore adequate indicia of reliability for the officer to credit the caller's account. The Supreme Court noted that by reporting that she had been run off the road by a specific vehicle, the caller necessarily claimed an eyewitness basis of knowledge. It stated that the apparently short time between the reported incident and the 9-1-1 call suggested that the caller had little time to fabricate the report. The Supreme Court also stated that a reasonable officer could have concluded that a false tipster would think twice before using the 9-1-1 system, which it explained had features that safeguard against making false reports with immunity.
In the instant case, Deputy Livers testified that an anonymous complainant had advised them that he observed occupants of a four-door silver vehicle discharging firearms while the vehicle was in motion in a certain area, and Deputy Nelson testified that they received an anonymous call from an individual who heard multiple gunshots in a certain area and that individual observed a four-door silver vehicle fleeing the area. After receiving the report, Deputy Nelson began to patrol the area for that vehicle and approximately one minute later, he observed a vehicle fitting that description in that area. He noted that it was late at night and that the only vehicle on the road was that four-door silver vehicle.
After review, we find that the totality of the circumstances established that the deputies had reasonable suspicion to investigate information presented to them by a *325 concerned citizen who had witnessed criminal conduct. The complainant described the vehicle's color, the number of doors, and the area where the vehicle was last seen. Deputy Nelson located a vehicle that matched that description in that area within approximately a minute, noting that it was the only vehicle on the road as it was late at night.
In light of the foregoing, we find that the judge did not err by finding that the stop of the vehicle was constitutional.
Standing to Challenge Search
The State argues that the juvenile has no proprietary interest in the backseat of Mr. Robinson's car, and therefore, he does not have standing to challenge the admissibility of the guns, citing State v. Moultrie , 15-2144 (La. 6/29/17); 224 So.3d 349. The juvenile contends that he has standing to challenge the search based on La. Const. Art. I, § 5, and State v. Fort , 95-882 (La. App. 3 Cir. 1/31/96); 670 So.2d 319.
La. Const. Art. I, § 5 provides:
Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in
violation of this Section shall have standing to raise its illegality in the appropriate court.
La. Const. Art. I, § 5.
In Moultrie , officers found cocaine in a barbecue grill located in a driveway between two trailers, one of which belonged to the defendant's mother. The defendant did not live with his mother. He moved to suppress the cocaine, which the trial court denied. The appellate court determined, however, that the search inside the grill was beyond the permissible scope of a protective search for weapons that might be used to harm the officers. Nevertheless, the supreme court reversed, finding that the defendant had no reasonable expectation of privacy in the grill.
In Fort , an officer stopped a vehicle for speeding. The defendant was a passenger in that vehicle. The driver signed a form consenting to a search of his vehicle. Marijuana was found during the search. The defendant filed a motion to suppress the evidence that was denied. The defendant pled guilty to possession of marijuana with the intent to distribute reserving his right to appeal the denial of the motion. On appeal, the defendant contended that the driver's consent was invalid and not free and voluntary. The appellate court found that the defendant had standing to object to the invalidity of the search because he was a person adversely affected by the search or seizure, citing La. Const. art. I, § 5, and State v. Gibson , 391 So.2d 421 (La. 1980).
In the instant case, we find that the juvenile was permitted to assert the validity of the search in court, since he was adversely affected by the search and seizure. See Fort, supra. However, as was discussed above, the driver of the vehicle was apparently a person who possessed authority over the vehicle that was sought to be inspected, and the driver's consent was given freely and voluntarily based upon the deputies' testimony at the suppression hearing.
Consent to Search Vehicle
Consent to search is an exception to the warrant requirement when it is freely and voluntarily given by a person who possesses authority or other sufficient relationship to the premises or other effects *326 sought to be inspected. United States v. Matlock , 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) ; State v. Edwards , 97-1797 (La. 7/2/99); 750 So.2d 893, 901, cert. denied , 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999) ; State v. Gomez , 01-717 (La. App. 5 Cir. 11/27/01); 802 So.2d 914, 918. If the State relies on consent to justify a warrantless search, it has the burden of proving the consent was given freely and voluntarily. State v. Cambre , 04-1317 (La. App. 5 Cir. 4/26/05); 902 So.2d 473, 479-80, writ denied , 05-1325 (La. 1/9/06); 918 So.2d 1039. Oral consent is sufficient and written consent is not required. Voluntariness of consent is a question of fact which the trial court is to determine based on the totality of the circumstances. State v. Gomez , 06-417 (La. App. 5 Cir. 11/28/06); 947 So.2d 81, 86. A trial court's factual determinations are entitled to great weight on appellate review. State v. Gibson , 97-1203 (La. App. 5 Cir. 3/25/98); 708 So.2d 1276, 1281.
In the instant case, Deputy Livers testified that once he arrived on the scene, he removed the driver from the silver four-door vehicle. He subsequently advised the driver that they were there because gunshots were heard in the area and that the reporting person described the vehicle as a silver four-door vehicle. Deputy Livers asserted that he asked the driver for permission to search the vehicle for any contraband that would be associated with that crime. Defense counsel then lodged a hearsay objection. When the judge learned that the driver was not T.L., he sustained the objection. The prosecutor subsequently began to ask the deputy whether he received consent, but defense counsel lodged another hearsay objection that was overruled. Afterward, Deputy Livers indicated that he received consent to search the vehicle from the driver.
Later, Deputy Nelson testified that during the stop, they asked the driver if he would allow them to search the vehicle since they were investigating it for potential weapons and that the driver complied. Defense counsel objected based on hearsay but the judge overruled the objection finding that the witness did not say anything. Afterward, the deputy testified that the driver gave verbal consent. Defense counsel then lodged a hearsay objection that was sustained. At the hearing on the motion to suppress, the judge found that the juvenile did not have the right to complain about whether or not the driver gave consent to search the car. He did not give reasons for that finding.
In State v. Smith , 04-3140 (La. 6/24/05); 906 So.2d 391, the supreme court found that although the declarant signed a consent form authorizing the warrantless search of a motel room she shared with the defendant during police questioning at the station house, that statement-a direct assertion of her state of mind and therefore hearsay-did not constitute testimonial hearsay for purposes of Crawford .[5] The supreme court reasoned that no objective person could have reasonably believed that the statement itself, as opposed to any real evidence that might result from an ensuing search, would be used later at trial against the defendant as testimonial evidence bearing on the question of guilt or innocence. The supreme court found that the consent form had relevance only to the constitutionality of the warrantless search which followed. Therefore, the supreme court found that the trial court erred in reconsidering its original ruling on the motion to suppress and in concluding that Crawford required production of the declarant for cross-examination at the hearing on the motion to suppress as a *327 prerequisite for finding that the declarant's consent validated the subsequent warrantless search.
In the instant case, since Mr. Robinson was driving the vehicle, he was a person who possessed authority over the vehicle that was sought to be inspected. The testimony of Deputy Livers that consent was given by the driver was admitted into evidence; however, defense counsel's hearsay objection to the testimony of Deputy Nelson regarding that same issue was sustained. In any event, hearsay evidence is permitted in a motion to suppress hearing. See State v. Turner , 08-1188 (La. App. 5 Cir. 5/12/09); 13 So.3d 695, 703, writ denied , 09-2100 (La. 8/18/10); 42 So.3d 400 (citing State v. Smith , 392 So.2d 454, 458, n.6 (La. 1980) ). In light of the deputies' testimony and the above jurisprudence, the driver's verbal consent to search his vehicle was given freely and voluntarily. However, since the judge found that the juvenile did not have the right to challenge the driver's consent to search, we have to determine whether that ruling was proper.
In State v. Gates , 13-1422 (La. 5/7/14); 145 So.3d 288, another case cited by the State and the juvenile in their briefs, a costumed couple in white face paint drove up next to an officer and told him that they were almost run off the road by a blue-colored pick-up truck, possibly a Chevy, while traveling on I-20. The officer did not obtain the names and addresses of the couple nor did he take down their license plate. The officer subsequently observed a truck that was straddling the double yellow center line of the highway and stopped it. The defendant was charged with DWI-third offense. The trial judge granted his motion to suppress evidence, and the court of appeal affirmed the trial court's ruling. However, the supreme court, citing Navarre , found that the totality of the circumstances established that the officer had reasonable suspicion to investigate information personally presented to him by concerned citizens who witnessed criminal conduct. It also found that the officer's reasonable suspicions were corroborated within minutes when, just outside his territorial jurisdiction, he personally observed the defendant's erratic driving. The supreme court also found that under these circumstances, the officer can be considered to have been in close pursuit under La. C.Cr.P. art. 213, and the subsequent detention of the defendant's vehicle was authorized. Thus, it concluded that the officer's actions were constitutionally reasonable under the Fourth Amendment and the Louisiana Constitution.
In Florida v. J.L. , supra , cited by the juvenile in his brief, the Supreme Court found that an anonymous tip that a person is carrying a gun, without more, was insufficient under the Federal Constitution's Fourth Amendment, to justify a police officer's stop and frisk of that person.
In State v. Elliott , 09-1727 (La. 3/16/10), 35 So.3d 247, cited by the State and the juvenile in their briefs, the supreme court found that information conveyed to a 9-1-1 dispatcher from the occupants of a vehicle following the defendant's car expressly described traffic violations as they occurred, providing the requisite indicia of reliability to justify a stop based on reasonable suspicion as required by La. C.Cr.P. art. 215.1. The supreme court asserted that the witnesses were clearly citizen informants providing information about a crime as it was happening and not anonymous tipsters. It also asserted that the dispatcher could reasonably infer from the circumstances that the caller was motivated by the desire to eliminate an immediate risk to public safety and was holding herself accountable for the information she provided by identifying herself, if not by name, then by the cellular phone from which she was calling.
*328 Automobile Exception
The automobile exception allows police to search a vehicle without a warrant if a car is readily mobile and probable cause exists to believe it contains contraband. State v. Francois , 04-1147 (La. App. 5 Cir. 3/29/05); 900 So.2d 1005, 1013 ; accord State v. Long , 03-2592 (La. 9/9/04); 884 So.2d 1176, 1183 n.6, cert. denied , 544 U.S. 977, 125 S.Ct. 1860, 161 L.Ed.2d 728 (2005). The Louisiana Supreme Court has explained that the inherent mobility of a vehicle and the risk of losing evidence because of this mobility have prompted courts to allow police to conduct an immediate warrantless search with probable cause. State v. Turner , 12-855 (La. App. 5 Cir. 5/16/13); 118 So.3d 1186, 1193 (citing Long, supra. )
In the instant case, as was discussed previously, Deputy Livers received a report from an anonymous complainant of gunfire coming from a silver four-door vehicle in a certain area late at night. Deputy Nelson testified that he located a vehicle that matched that description in that area within approximately one minute and that it was the only vehicle on the road. During the stop, Deputy Nelson observed the juvenile, the backseat passenger on the driver's side, leaning toward the floorboard of the vehicle, which alerted him that the juvenile might have something in his possession. As such, we find that the deputies were allowed to search the vehicle without a warrant because the vehicle was readily mobile and probable cause existed to believe it contained contraband, i.e., evidence of weapons.
Denial of Motion to Suppress Statement
The juvenile argues that the judge erred in denying his motion to suppress his statement. He points out that the officer testified that he was questioning the juvenile's older cousin when the juvenile made incriminating statements. The juvenile contends that it was not made clear at the hearing how the officer explained to the juvenile that the juvenile's cousin, and not the juvenile himself, was the object of the questioning. He further contends that T.L. was 15 years old at the time of his arrest, had not had much interaction with the judicial process, and only gave a statement after his cousin, also in custody, had denied the guns were his. The juvenile asserts that under the circumstances, the statement should have been suppressed because the presence of his cousin had the effect of coercing T.L.'s statement. Further, the juvenile contends that since the statement was the sole evidence of guilt, the error could not be found to be harmless.
The State responds that the judge properly admitted T.L.'s statement that the firearms belonged to him. It further responds that because T.L. had been informed of his rights and was not being interrogated, his constitutional rights were not violated, noting that Miranda was only applicable if the defendant was under express questioning or its functional equivalent. The State asserts that T.L.'s statements were spontaneous utterances and were not made in response to an inquiry directed at him. It also asserts that there is no evidence that the officer's interview of the other passenger was a pretext to extract a confession from T.L.
On August 7, 2017, the juvenile filed omnibus motions, including a motion to suppress the statement. In that motion, the juvenile moved the court to suppress and exclude any confessions or other inculpatory statements obtained from him pursuant to a custodial interrogation. The juvenile asserted that any such confession or inculpatory statement was not the product of a knowing, intelligent, and/or voluntary waiver of the right to remain silent and the *329 right against self-incrimination, and therefore, should be suppressed.
At the suppression/adjudication hearing, defense counsel argued with respect to the motion to suppress statement that the juvenile's statement was provided in connection with custodial interrogation and that there was no definitive proof that he was correctly advised of his rights and provided a knowing, intelligent, and voluntary waiver of those rights. Defense counsel contended that the juvenile was in custody at the time of the inculpatory statement as he was in handcuffs in the back of a police vehicle. She further contended that no juvenile rights form was endorsed. She argued that although the deputy claimed he was interviewing someone else when the juvenile made his statement, under the circumstances and given the way that a child views situations differently from adults, this was an interrogation. Defense counsel asserted that the juvenile felt pressured to make a statement acknowledging that the guns were his. The State responded that the deputy clearly stated that the statements were not made as a result of the interrogation of the juvenile and that he was not planning to interrogate the juvenile at all "because the juvenile would not give information to allow his parents to be bought to the scene."
After hearing arguments of counsel, the juvenile court judge found that no statement was actually ever taken by the police, and he was unsure that a motion to suppress was appropriate in this case since spontaneous utterances are not considered a confession or statement elicited as a result of questioning or interviewing by a police officer. The judge then denied the motion to suppress the statement, finding that the juvenile made spontaneous utterances which were admissible under the facts of this case.
In Miranda v. Arizona , 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the United States Supreme Court stated that the prosecution may not use a statement, whether exculpatory or inculpatory, stemming from custodial interrogation of a defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. State v. Hunt , 09-1589 (La. 12/1/09); 25 So.3d 746, 750 n. 2. The constitutional privilege against self-incrimination and the right to counsel apply equally to juveniles and adults. State v. Terrick , 03-515 (La. App. 5 Cir. 9/30/03); 857 So.2d 1153, 1159, writ denied , 03-3272 (La. 3/26/04); 871 So.2d 346.
In a hearing on a motion to suppress, the State bears the burden of proving the admissibility of a purported confession or statement by the defendant, and of any evidence seized without a warrant. La. C.Cr.P. art. 703(D). Before an inculpatory statement during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda rights, that he voluntarily and intelligently waived these rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements, or promises.
Hunt , 25 So.3d at 754.
The obligation to provide Miranda warnings attaches when a person is questioned by law enforcement after he has been taken into custody or otherwise deprived of his freedom of action in any significant way. Miranda , 384 U.S. at 444, 86 S.Ct. at 1612 ; State v. Payne , 01-3196 (La. 12/4/02); 833 So.2d 927, 934. As such, Miranda warnings are applicable only when it is established that the defendant has been subject to a "custodial interrogation."
*330 Hunt , supra . Interrogation under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. Payne , 833 So.2d at 938.
Spontaneous and voluntary statements, not given as a result of police interrogation or compelling influence, are admissible without Miranda warnings even where a defendant is in custody. State v. Castillo , 389 So.2d 1307, 1310 (La. 1980), cert. denied , 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981). Police officers are not obliged to ignore spontaneous and unsolicited statements by someone in custody, as long as the statements do not result from police-initiated custodial interrogation or questioning "reasonably likely to elicit an incriminating response." State v. Ross , 95-1798 (La. 3/8/96); 669 So.2d 384, 386.
A determination of whether a waiver of constitutional rights was knowing and voluntary is made on a case-by-case basis, and such a determination rests upon the totality of the circumstances. State v. McGee , 04-963 (La. App. 5 Cir. 1/11/05); 894 So.2d 398, 407, writ denied , 05-593 (La. 5/20/05); 902 So.2d 1050. In juvenile delinquency cases, when determining the validity of a waiver, courts should consider the totality of the circumstances, which includes an assessment of the "juvenile's age, experience, education, background, and intelligence and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." State v. Fernandez , 96-2719 (La. 4/14/98); 712 So.2d 485, 487.
In the instant case, the record reflects that Deputy Nelson had all the occupants exit the vehicle. He recalled that they handcuffed everyone, read them their rights, and placed them into the police vehicles. Deputy Nelson testified that he placed T.L. and the other backseat occupant in the backseat of his vehicle. He explained that the other backseat occupant told him that he was on probation and that the firearms were not his. He further explained that T.L. then spontaneously told him that both of the "hammers," which he stated was street slang for firearms, were his. Deputy Nelson noted that T.L. was "upset," "irritated," and "very angry" because the investigation was not going fast enough and because the deputy did not immediately believe his story. He asserted that T.L. told him several times that the firearms were his. Deputy Nelson testified that he did not ask T.L. to sign a waiver of rights form because he did not intend to question T.L. or ask him anything pertaining to the investigation until his parent could be present. But, he noted that T.L. never gave them information as to who his mother or guardian was.
In light of the foregoing, we find that the judge did not err by denying the motion to suppress T.L.'s statement wherein he admitted that the firearms belonged to him. T.L.'s statement was spontaneous and voluntary and not made as a result of police interrogation or compelling influence. Spontaneous and voluntary statements, not given as a result of police interrogation or compelling influence, are admissible without Miranda warnings even where a defendant is in custody. See Castillo, supra. Also, there is no evidence that the deputy's interview of the other backseat passenger caused T.L. to admit that the firearms belonged to him.
Revocation of Probation
The juvenile argues that the judge erred in revoking his probation based *331 upon delinquency adjudications that are not supported by sufficient evidence. He notes that at the revocation hearing, the testimony showed that since being placed on probation for the simple battery charge, his behavior had improved and he had no violations or disciplinary actions while in the Youth Challenge Program. He also notes that the judge indicated that the sole cause for the revocation was the delinquency adjudication for the gun allegations.
The State responds that if the probation violation involves the illegal possession of a firearm, probation revocation is mandatory. It further responds that as discussed previously, the judge properly denied the motion to suppress, and the delinquency finding was based on sufficient evidence. The State notes that under the Children's Code, the judge could have revoked the juvenile's probation for any of the violations outlined in the probation officer's rule, including the juvenile's failure to abide by curfew, his use of drugs, and/or the refusal to keep his mother informed of his whereabouts. It contends that the judge's recommendation that the juvenile be placed in non-secure custody of the OJJ is the least restrictive disposition under the circumstances and that the disposition should be upheld.
On September 7, 2017, a disposition/revocation of probation hearing was held. At that hearing, A'Tisha Robinson from "probation" testified that there was a "staffing" conducted on September 1st with OJJ who recommended a non-secure setting. She stated that probation concurred with that recommendation. Ms. Robinson indicated revocation and jail time were mandatory because the juvenile was on probation and convicted of possession of a handgun. Afterward, the juvenile court judge committed the juvenile on each of the "C" and "D" charges to six months at OJJ to run concurrently with each other and consecutively to the "A" charge of simple battery, for a total of one year.
As to the revocation, the judge found that the juvenile had been convicted of being in possession of a handgun, which was a mandatory condition for revocation of probation under the Children's Code. The judge stated that she was satisfied that all legalities had been met. She also found that reasonable efforts had been made to avoid having to place the juvenile in the custody of the State. The judge noted that the juvenile had been through the Diversion Program and the "Informal FINS Program" and had received services through both of those programs. She also noted that the juvenile had regular and intensive probation supervision by "DJS" and received services from both of those. The judge asserted that the juvenile had psychiatric evaluations by both Dr. Biswas and Dr. Chakraborti, GPS monitoring through the "ATD program," successfully completed the Youth Challenge Program, and had "bouts" at Rivarde. Accordingly, the judge revoked her previously suspended sentence of six months but gave the juvenile credit for time served at Rivarde on the battery charge in connection with the revocation. She stated that she would not object to a non-secure placement for the juvenile, but it would be up to the department to determine where the juvenile would be placed. The judge also set the juvenile's case for review in six months.
La. Ch.C. art. 914(B) provides that if the probation violation is the illegal or unlawful possession of a firearm, probation revocation is mandatory, and the child shall be committed to the custody of the Department of Public Safety and Corrections.
In the instant case, T.L. violated his probation by being adjudicated delinquent of two counts of illegal possession of a *332 firearm by a juvenile. As such, we find that the probation revocation was mandatory under La. Ch.C. art. 914(B). Although T.L. argues that the judge erred by revoking his probation because his delinquency adjudications were based on insufficient evidence, as previously discussed in this opinion, the evidence was sufficient to support those adjudications. Therefore, we find that the judge did not err in revoking T.L.'s probation on that ground.
Errors Patent Discussion
The record was reviewed for errors patent.[6] La. C.Cr.P. art. 920 ; State v. Oliveaux , 312 So.2d 337 (La. 1975) ; and State v. Weiland , 556 So.2d 175 (La. App. 5th Cir. 1990).
The transcript in this matter does not reflect that the judge advised T.L. of the two-year prescriptive period for seeking post-conviction relief as mandated by La. C.Cr.P. art. 930.8. In a juvenile case, such notice should be given. See State ex rel. B.D. , 13-760 (La. App. 5 Cir. 4/23/14); 140 So.3d 308, 313, writ denied , 14-1093 (La. 1/9/15); 157 So.3d 597.
If a trial court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief. See State v. Brooks , 12-226 (La. App. 5 Cir. 10/30/12); 103 So.3d 608, writ denied , 12-2478 (La. 4/19/13); 111 So.3d 1030. Thus, by way of this opinion, we inform the juvenile that no application for post-conviction relief, including an application for an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. C.Cr.P. art. 914 or 922. See State ex rel. B.D. , 140 So.3d at 313.
DECREE
For the foregoing reasons, we affirm the juvenile's delinquency adjudications for possession of a handgun by a juvenile and subsequent revocation of his probation.
AFFIRMED

In order to maintain the confidentiality of the proceedings, as required by La. Ch.C. art. 412, the initials for the juvenile will be used. See State ex rel. D.W. , 09-855 (La. App. 5 Cir. 9/14/10); 47 So.3d 1048, 1051 n.1.

Also on February 24, 2016, the Jefferson Parish District Attorney filed a petition in juvenile court alleging that the juvenile resisted an officer in violation of La. R.S. 14:108 (petition "B"). On March 30, 2016, the State dismissed petition "B".

First offense handgun possession is a misdemeanor-grade delinquent act. In the Interest of T.M. , 11-1238 (La. App. 4 Cir. 3/28/12); 88 So.3d 1228, 1230 n.1, granted in part , 12-0964 (La. 12/14/12); 104 So.3d 418. In the instant case, both counts one and two are misdemeanors since each count in the petition is followed by (M). Also, the record does not indicate that the juvenile has any previous delinquency adjudications for illegal possession of a firearm by a juvenile.

See State v. Hernandez , 11-146 (La. App. 5 Cir. 11/29/11); 82 So.3d 327, 332, writ denied , 12-0033 (La. 8/22/12); 97 So.3d 357, where the court held, "In light of defendant's proximity to the gun and his movements towards the area from which the gun was later recovered, we find that the jury could have reasonably inferred that defendant was aware that the gun was in his presence and that he intended to possess it."

Crawford v. Washington , 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

The Louisiana Children's Code is silent as to whether an error patent review is mandated in a juvenile appeal, although this Court has conducted limited reviews for errors patent in the past. See, e.g, State in the Interest of Z.S. , 01-1099 (La. App. 5 Cir. 2/26/02), 811 So.2d 1003, 1008. La. Ch.C. art. 104 provides that, in the absence of procedures prescribed by the Children's Code, the Louisiana Code of Criminal Procedure shall apply. This Court is thus authorized by La. C.Cr.P. art. 920 to conduct a review for errors patent.