CLARENCE E. McMANUS, Judge.
| gDefendant appeals from his adjudication as a delinquent for armed robbery in violation of LSA-R.S. 14:64, and his disposition of placement in the Office of Juvenile Justice, Secure Care, for three years. For the reasons that follow, we affirm the adjudication and the disposition.
On November 24, 2010, D.S.,[1] age 16, was charged by petition in juvenile court with armed robbery in violation of LSA-R.S. 14:64. The adjudication hearing was held on January 19, 2011. During the hearing, D.S. moved for a directed verdict, which was denied. At the conclusion of the hearing, the judge adjudicated D.S. delinquent as charged. After the denial of defendant’s motion for new trial, the court entered a judgment of disposition that D.S. be placed in the Office of Juvenile Justice, Secure Care, for three years.[2] Following the denial of his motion to reconsider and reduce his sentence as excessive, defendant’s motion for appeal was granted.
The following facts were elicited from the trial in this matter. On November 17, 2010, Herman Stevens, an employee of Domino’s Pizza, went to 1641 42nd Street, Apartment B, to deliver pizzas and was the victim of an armed robbery.
|sThe order for the pizza was placed at 5:55 p.m. from phone number (504) — 487— 9752. Mr. Stevens testified that he was supposed to deliver two large pizzas to someone named “Corey.” The total was $30.96, which would be paid for with cash upon delivery. He testified that he arrived at the address and a young black male, who was approximately 16 years old, was standing outside of the apartment. The person asked Mr. Stevens if they were hiring and then asked about the price of the pizzas. Mr. Stevens told him the price was $30.96, and the young person put his hand in his pocket and kept it there.
Mr. Stevens testified that while waiting for the person to hand him the money for the pizzas, he observed two other individuals come from the walkway off of “Newport.” He described the individuals, who were both wearing “hoods.” One of the individuals was black and was described as “kind of tall.” He appeared to be about 18 years old. The other individual was short, about 5'6", and appeared to be either 16 or 18 years old. Mr. Stevens described him as having light skin and weighing between 150 and 175 pounds. He believed the individual was smaller than him. Mr. Stevens said his own weight was 260 and that he was 6'3". He described the individual’s clothing as a cotton white or gray hooded jacket with black pants or jeans. He explained the jacket as a “sweatshirt type” with a zipper. Mr. Stevens testified that he realized that this individual was Spanish when he began speaking with an accent and said, “Give that shit up.”
Mr. Stevens testified that the Spanish individual pointed a gun at him the entire time he was making the delivery. He explained that he went into his bag and got the pizzas. The gunman told him to give the pizzas to the person who had been standing in front of the apartment door. Mr. Stevens gave the pizzas to him and walked away. While walking away, he *1134 heard the robber say ‘You give that shit up too.”
14Mr. Stevens testified that he was mostly concerned with the black gun and, therefore, was not looking at the gunman’s face. Mr. Stevens was not able to identify the robber in a photographic lineup because he did not see the robber’s face, but he was able to identify the robber by his voice. At the adjudication hearing, D.S. repeated the statements three times each that Mr. Stevens testified that the Spanish male said during the robbery. Mr. Stevens testified that D.S.’s voice sounded like the voice he heard the night of the robbery. Also, D.S. stood up and Mr. Stevens agreed that D.S. had the same build and was the same height as the Spanish male that robbed him. On cross-examination, Mr. Stevens was asked if he would be surprised to learn that D.S. was 5'2" and weighed 145 pounds, noting that he said earlier that the robber was 5'6" and between 150 and 175 pounds.
Detective Harold Pendergast of the Kenner Police Department was involved in the robbery investigation. He testified that the investigation into the phone number used to order the pizza delivery revealed that the cell phone used belonged to Reinaldo Delgado Sanchez, D.S.’s father. The phone records showed that the number (504)-487-9752 called Domino’s. The records revealed that the address of D.S.’s father was 4201 Arkansas. The records showed that the first call into Domino’s came at 5:45 and then the second call was at 5:52. Domino’s then called the number back at 5:56.
Detective Pendergast went to meet with D.S.’s father at 4201 Arkansas. The homeowner informed him that the father had been renting from her but had since moved out. However, at that time, D.S.’s father pulled up in his vehicle. Officer Junie Munoz was able to serve as a Spanish translator. The State presented a map that included the 4201 Arkansas location as well as the location of the robbery. Detective Pendergast testified that the two locations were both “within the block.” | ^Detective Pendergast learned from D.S.’s father that he had a new phone and gave his other phone to his son who lived at 4111 Delaware Avenue, Apartment 28, with his mother.
Detective Pendergast testified that he went to this address to look for the phone, the clothing described in the robbery, and a possible weapon. He testified that D.S. fit the description of the Spanish male who committed the robbery. Also, this address was about two-tenths of a mile from the location of the robbery.
D.S.’s mother consented to a search of the residence. Detective Pendergast recovered clothing from the residence. He found a gray sweatshirt upstairs on the stair rail near D.S.’s bedroom and a pair of dark jeans or blue jeans inside of D.S.’s bedroom. He believed the sweatshirt, could be cotton, but noted that the sweatshirt did not have a zipper. Although no weapon was discovered, a projectile was found. D.S.’s cell phone was also retrieved. Detective Pendergast testified that this was the phone that was used to make the calls to Domino’s.
D.S. was arrested on charges of armed robbery. Detective Pendergast testified that D.S. told him that they “couldn’t prove anything with his phone number.”
D.S.’s father testified that he had transferred his phone to his son, who lived at 4111 Delaware, Apartment 11, about seven months before. It was transferred to his son before November 17, 2010. The phone number was (504)^487-9752.
Officer Mark Stein of the Kenner Police Department testified that he was a patrol officer assigned to investigate the robbery. He learned from other officers and from *1135 the investigation that the location where the robbery occurred was a vacant residence.
D.S. testified that he weighs 145 pounds and is about 5'2" or 5'2 ½". D.S. testified that he never had a gun. He explained the bullet that was found in his |fihouse was from when he was shot in the leg with a “40 Gloek” when he was 14 or 15 years old. He explained that he went to a party and got into an argument with someone. D.S. said that about 5:00 on November 17th, he was playing basketball in the parking lot next to his house with his friend, J.B., against others for money. He said that there was one light, but no big lights to play after dark. He agreed that the time had changed and it would have been dark when he was still playing at 5:55 p.m. He then said there were lights on each side. He said he put his phone on the side when they were playing to make sure it would not break when he was playing. He testified that he could not keep his eye on it when he was playing and that someone could have picked up the phone and made a call. He testified that after he played basketball he went “up the street” and asked a friend if he had his phone and was told that he did not. He took the same route to look for it and when he got back he found his phone somewhere around the basketball court. He said he had no idea who had his phone. D.S. agreed that he heard Mr. Stevens say where the robbery took place and that the robber came from the Newport Place direction, which was where he said he was.
D.S. admitted that he owned black pants, but said the sweatshirt found belonged to his mother. D.S. denied that he made the call to Domino’s pizza and denied robbing Mr. Stevens. He admitted that the phone that made the call was found in his room. He said that he lived about .2 miles from where the robbery took place. He also admitted that his father had lived about 30 feet from the location of the robbery, but did not live there anymore. D.S. said he spent weekends with his father when he did live there. He testified that he would not know if the apartment was vacant. He testified that he was 16 years old and preferred that he be described as Cuban instead of Hispanic.
|7In his first allegation of evidence, D.S. argues the evidence presented did not support the delinquency adjudication and the judge erred in failing to grant a directed verdict of acquittal at the close of the State’s case. D.S. contends that the victim could not make an identification and never expressed positively that D.S.’s voice was the actual voice he heard. He argues that the phone records that were introduced without any evidentiary foundation pursuant to LSA-C.E. art. 803(6) did not establish that it was D.S. that made the calls, even though the records showed the calls were placed by D.S.’s phone. He further contends that the seized clothing did not support a finding that D.S. committed the robbery. He notes that the police did not find a gun. He concludes that only his phone links him to the armed robbery.[3]
“In order for the court to adjudicate a child delinquent, the state must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition.” LSA-Ch.C. art. 883. The constitutional standard for testing the sufficiency of evidence requires that the evidence, direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient *1136 to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt, in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State ex rel. D.W., 09-855, pp. 5-6 (La.App. 5 Cir. 9/14/10), 47 So.3d 1048, 1053. In a juvenile delinquency proceeding, the State’s burden of proof is the same as in a criminal proceeding against an adult, to prove beyond a reasonable doubt every element of the offense alleged in the petition. Id.
IsThe rule as to circumstantial evidence is that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” LSA-R.S. 15:438. This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt. State ex rel D.W., supra. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Id.
In juvenile proceedings, the scope of review on appeal extends to both law and facts. See LSA-Const. art. V, § 10(B); State ex rel. D.F., 08-0182, p. 5 (La.App. 1 Cir. 6/6/08), 991 So.2d 1082, 1085, writ denied, 08-1540 (La.3/27/09), 5 So.3d 138. The Louisiana Fourth Circuit Court of Appeal has held that the “clearly wrong-manifest error” standard of review should be used to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt. State ex rel. C.N., 11-0074 (La.App. 4 Cir. 6/29/11), 69 So.3d 711, 714.
Although appellate review of juvenile cases extends to law and fact, the juvenile judge observes the conduct and demeanor of the witnesses and is in a far better position to determine credibility and weigh the evidence. State ex rel. C.J., 10-1588, pp. 3-4 (La.App. 4 Cir. 4/20/11), 63 So.3d 1133, 1137 (quotation omitted). Thus, the appeals court should afford great deference to the judge’s findings of fact and to the judge’s determination of witness credibility and weight to be given their testimonies. Id. The fourth circuit recognized that courts of appeal may not reverse findings of the trial court unless manifestly erroneous or clearly wrong. Id.
D.S. was adjudicated delinquent of armed robbery in violation of LSA-R.S. 14:64. “Armed robbery is the taking of anything of value belonging to another | (|from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.” LSA-R.S. 14:64(A). “The elements of armed robbery are: (1) the taking, (2) of anything of value, (3) from a person or in the immediate control of another, (4) by the use of force or intimidation, (5) while armed with a dangerous weapon.” State ex rel. C.J., 10-1350, p. 7 (La.App. 4 Cir. 2/9/11), 60 So.3d 46, 51 (quotation omitted). Encompassed in proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. State v. Rowan, 97-21, p. 4 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1054.
In the present case, we find that the State presented sufficient evidence of the elements of the armed robbery. The State proved that there was a taking of pizzas, valued at $30.96, from Mr. Stevens who was delivering the pizzas. It demonstrated that the robber took the pizzas by intimidation while armed with a gun. Further, the State established that D.S. was the gunman that robbed Mr. Stevens. The State further proved that D.S.’s phone was used to place the order for delivery of the pizzas to the vacant apartment where the robbery occurred. This phone had *1137 been transferred to him by his father and was found in his residence after the robbery. Clothes matching the description of the clothing worn by the gunman were also found in D.S.’s residence, either near his bedroom or in his bedroom, and that there was only a minor discrepancy as to whether the grey sweatshirt contained a zipper. Further, D.S. matched the description of the Spanish male that robbed Mr. Stevens. His weight and height were very similar to that of the person Mr. Stevens described as the robber. The height may have been different, but within a few inches. Mr. Stevens did testify that he was focused on the gun during the robbery. D.S.’s mother and father both lived near the location hoof the robbery, and D.S. admitted he was near the scene of the robbery around the time it took place.
Finally, D.S. repeated the words Mr. Stevens claimed he heard the robber speak. Mr. Stevens stated that D.S.’s voice matched the robber’s voice, which appears to have been distinguishable by his accent. Positive identification by only one witness may be sufficient to support a defendant’s conviction. State v. S.B., 31,-264, p. 7 (La.App. 2 Cir. 9/25/98), 719 So.2d 1121, 1126-27. Voice identification has been found as reliable and sufficient evidence of identity. See State v. Steward, 42,705, p. 10 (La.App. 2 Cir. 2/13/08), 975 So.2d 829, 835.
Although D.S. presented a hypothesis of innocence in explaining his alibi and the whereabouts of his phone, it appears that the juvenile court did not accept his version as credible. D.S. claimed while he was playing basketball he left his phone unattended, and that anyone could have used the phone to make the call and place the order. After searching for his phone following the basketball game, he discovered the phone when he returned to the “basketball court.” The court decided that the phone evidence was “very damning.” The judge believed D.S.’s story was “ridiculous” that the phone may have been picked up and then he went to search for it in the exact direction that the victim claimed the gunman came from. The judge believed the three were in “cahoots” and set up the robbery. The judge also believed that although the victim was unable to recognize the robber’s face, he was able to pick out a voice and knew the gunman was a Hispanic male. The judge believed the general description matched, noting that the height may have been a few inches off. The judge appears to have blamed any inaccuracy to the fact that the victim was terrified by the gun being pointed at his face. Accordingly, the judge rejected D.S.’s hypothesis of innocence of the possibility that the phone In was taken. The judge was in the best position to make these credibility findings after hearing the testimonies of the witnesses, including D.S.
In conclusion, the entirety of the evidence is sufficient to support the adjudication of armed robbery. This assignment of error is without merit.
In his second allegation of error, D.S. alleges the disposition is constitutionally excessive and was imposed without consideration of mitigating factors in the record. D.S. argues he was 16 years old and had no previous delinquency adjudications. He contends that there is no indication that he is either mentally or socially challenged so that rehabilitation is not possible. He claims the judge failed to consider his personal background or mitigating factors in this case, such as his parental involvement, his current school record, and the lack of any prior offenses, in imposing a term of imprisonment that would mean that D.S. would spend almost all of his remaining teenage years in custody. He argues that instead in her reasons for judgment, the judge focused en *1138 tirely on the offense, the community, and personal ramifications of such a crime. He concludes nothing in the record supports the sentencing choice.
At the disposition hearing, the probation officer recommended mandatory secure care pursuant to the statutes, for a period of time for the court to determine. The defense did not present any witnesses, although it was given the opportunity to do so. Counsel then requested as lenient of a sentence as possible. The court noted that D.S. held a gun to another person’s head in return for something as foolish as a pizza and believed that he forfeited his right to live in the community. The judge believed this was a serious, heinous, and violent offense that changes the victim’s life forever. The judge believed that he would be a risk to the safety of the community. The judge acknowledged she had to consider what was best for public safety and the community against what was best for D.S. The judge also | ^commented that if the individual had been armed, that D.S. could have been shot, noting that his actions posed danger to the victim and to himself. The court commented that it would not tolerate a teenager in possession of a firearm and using it against a good citizen of the community who was working and trying to do something constructive. After the disposition, counsel orally moved to reconsider and reduce the sentence as excessive. The court denied the motion, and D.S. objected.
The Louisiana Constitution of 1974, Art. I, Sec. 20 prohibits “cruel, excessive, or unusual punishment.” State ex rel. D.W., 09-555 at 21, 47 So.3d at 1061 (quotation omitted). “In considering dispositional options, the court shall not remove a child from the custody of his parents unless his welfare or the safety and protection of the public cannot, in the opinion of the court, be adequately safeguarded without such removal.” LSA-Ch.C. art. 901(A); State ex rel. D.W., supra, (quotation omitted).
Much discretion is granted to the court in juvenile matters due to the special nature of the proceedings. State ex rel. S.J., 10-990 (La.App. 5 Cir. 5/24/11), 66 So.3d 1142, 1145. A juvenile court has much discretion, because of the special nature of the proceedings, but the juvenile court must balance the needs of the child with the best interest of society. State ex rel. T.S., 04-1111, p. 5 (La.App. 5 Cir. 3/1/05), 900 So.2d 77, 79-80. “The court should impose the least restrictive disposition authorized by Articles 897 through 900 of this Title which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society.” LSA-Ch.C. art. 901(B); State ex rel. D.W., supra, (quotation omitted). The commitment of the child to the custody of the Department of Public Safety and Corrections may be appropriate if, there is an undue risk that during the period of a suspended commitment or probation the |ischild will commit another crime, the child is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment, a lesser disposition will deprecate the seriousness of the child’s delinquent act, or the delinquent act involved the illegal carrying, use, or possession of a firearm. State ex rel. D.W., 09-855 at 21-22, 47 So.3d at 1061 (citing LSA-Ch.C. art. 901(C)).
In the present case, D.S. was found delinquent of armed robbery in violation of LSA-R.S. 14:64. LSA-Ch.C. art. 897.1(B) provides the following:
After adjudication of a felony-grade delinquent act based upon a violation of R.S. 14:64, armed robbery, the court shall commit the child who is fourteen years of age or older at the time of the commission of the offense to the custody *1139 of the Department of Public Safety and Corrections to be confined in secure placement for the length of the term imposed by the court at the disposition hearing without benefit of parole, probation, suspension of imposition or execution of sentence, or modification of sentence.
The robbery occurred on November 17, 2010. The record indicates that August 21, 1994 was D.S.’s birthday. As such, it appears that article 897.1(B) would apply to the instant case.
The Louisiana Supreme Court has held that juvenile courts are authorized to use discretion in determining the term of commitment to the custody of juveniles adjudicated guilty of armed robbery. State ex rel. A.M., 98-2752 (La.7/2/99), 739 So.2d 188, 191. We do not find that the court abused its discretion with this disposition. Louisiana Children’s Code article 901, subsections (A) through (D) provide the general disposition guidelines the Court is to consider when imposing a sentence upon a juvenile. D.S. argues that the judge failed to consider mitigating factors applicable to him. However, article 901(E) provides the following:
The general disposition guidelines set forth in Paragraphs A through D of this Article do not apply when a child has been adjudicated a delinquent for the violation of ... R.S. 14:64, armed robbery in accordance with Article 897.1.
[14In the present case, the evidence presented shows that the robbery of the pizza delivery person was planned. The call was placed to Domino’s to lure the delivery person to a vacant apartment location for commission of the robbery. It was staged that someone would be waiting by the apartment for the pizzas. D.S. and another individual appeared to have been watching for the arrival of the pizzas to know when to approach. D.S. wore a “hood” and used a gun to accomplish the crime.[4] Further, this armed robbery involved a 16-year-old who pointed a gun at someone for pizzas. The record reflects there was also a simple battery petition that was dismissed by the State when D.S. was adjudicated guilty of armed robbery.
Given the testimony of the probation officer at the disposition hearing as well as the predisposition investigation report, and considering the judge’s wide discretion afforded in juvenile matters, we find that the disposition imposed was not excessive. As such, this assignment of error lacks merit.
This Court has determined that in juvenile cases, LSA-C.Cr.P. art. 920 mandates an error patent review whether or not defense counsel asked for it. State ex rel. T.S., at 9, 900 So.2d at 82. This review reveals the following.
The judge failed to advise D.S. of the two-year prescriptive period for seeking post-conviction relief as mandated by LSA-C.Cr.P. art. 930.8. We advise D.S., by this opinion, that no application for post-conviction relief, including an application which seeks an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of LSA-C.Cr.P. arts. 914 and 922. State ex rel. D.W., 09-855 at 26, 47 So.3d at 1063.
Further, the judge did not sentence D.S. pursuant to LSA-Ch.C. art. 897.1(B), which provides that he should have been confined in secure placement | ^without benefit of parole, probation, suspension of imposition or execution of sentence, or modification of sentence. No restrictions of benefits were imposed at the disposition hearing. Likewise, the minute entry of the disposition does not reflect *1140 that the disposition included any restriction of benefits. However, these restrictions are mandatory and the trial court is without discretion in their imposition. Accordingly, we remand this matter for correction of the disposition to provide that defendant’s confinement be served without benefit of parole, probation or suspension of sentence.
For the above discussed reasons, the defendant’s adjudication and disposition are affirmed and the matter is remanded for correction of the disposition to provide that defendant’s confinement be served without benefit of parole, probation, suspension of imposition or execution of sentence, or modification of sentence.

AFFIRMED AND REMANDED

. In order to maintain the confidentiality of the proceedings, as required by LSA-Ch.C. art. 412, initials are used for all of the juveniles involved.

. The Louisiana Children’s Code refers to a judgment of disposition rather than a sentence. LSA-Ch.C. arts. 678(A) and 684(A).

. It is noted that D.S.’s brief alleges facts unsupported by the record that have not been considered for purposes of this memorandum. Further, evidentiary arguments regarding the phone records are not proper for the first time on appeal. The records were not objected to on this basis at the time of admission.

. See State v. S.B., supra.