STATE OF LOUISIANA IN THE INTEREST
OF J.F.

NO. 24-KA-386

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE JEFFERSON PARISH JUVENILE COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 23-JU-141, DIVISION "A"
HONORABLE JENNIFER G. WOMBLE, JUDGE PRESIDING

October 18, 2024

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Scott U. Schlegel, and Timothy S. Marcel

<u>**AFFIRMED**</u>
    **MEJ**
    **SUS**
    **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
     Honorable Paul D. Connick, Jr.
     Thomas J. Butler
     Matthew R. Clauss

COUNSEL FOR DEFENDANT/APPELLANT,
J.F.
     Katherine M. Franks

**JOHNSON, J.**

Juvenile, J.F.[1], seeks review of the Jefferson Parish Juvenile Court's adjudications finding he committed attempted second degree murder (count three) and illegal possession of a handgun by a juvenile (count four), and the dispositions committing him to three years in secure care on count three and six months on count four, with both dispositions to run concurrently. For the following reasons, the juvenile court's adjudications and dispositions are affirmed.

### FACTS AND PROCEDURAL HISTORY

On January 5, 2024, the Jefferson Parish District Attorney filed a petition in juvenile court alleging that the juvenile, J.F., illegally used weapons or dangerous instrumentalities in violation of La. R.S. 14:94 (count one), committed simple criminal damage to property in violation of La. R.S. 14:56 (count two), committed attempted second degree murder in violation of La. R.S. 14:27 and La. R.S. 14:30.1 (count three), and illegally possessed a handgun as a juvenile in violation of La. R.S. 14:95.8 (count four). J.F. denied the allegations of the petition on January 8, 2024.

At the May 2024 adjudication hearing, the victim, D.S., testified that on the afternoon of December 4, 2023, he saw his cousin, G.H., get into a fight with J.F. at Strehle Community School. D.S. started attending the school the previous month. He did not know J.F., but they had mutual friends and he knew that J.F. lived in Kennedy Heights.

After school, at approximately 3:10 p.m., D.S. began walking on the sidewalk of Ursula Drive in Avondale with his two cousins, K. and P. D.S.

---

[1] In order to maintain the confidentiality of the proceedings, as required by La. Ch.C. art. 412, and pursuant to Uniform Rules–Courts of Appeal, Rules 5-1 and 5-2, the initials of the juvenile (and any witnesses under the age of majority) will be used. *See State in Int. of T.L.*, 17-579 (La. App. 5 Cir. 2/21/18), 240 So.3d 310, 315 n.1; *State in the Int. of C.L.*, 15-593 (La. App. 5 Cir. 12/23/15), 184 So.3d 187, 188 n.1.

lived on Ursula Drive with his aunt and uncle, G.H., and three other cousins. D.S. further testified that he observed a maroon Volkswagen stop in front of his house at 120 Ursula before pulling up alongside of him. He also recalled that there were three people inside that vehicle—the driver, a front seat passenger, and a rear seat passenger. He could not identify the driver or the front seat passenger.

J.F. then exited the vehicle from the driver's side rear seat, pulled out a gun, called him a "b*tch," and started shooting at him. D.S. recalled that he froze, then started running. D.S. was struck by a bullet that went straight through his left wrist. D.S. ran to the right side and then the left side, and then ran to his home on Ursula and showed his wound to his aunt. Someone called 9-1-1, and the police and EMS came to the scene. EMS took D.S. to Children's Hospital where Detective Jamal Cook from Jefferson Parish Sheriff's Office ("JPSO") met with him to investigate the incident.

Detective Cook later showed D.S. a single photograph of J.F., whom D.S. positively identified as the shooter. D.S. testified that when the juvenile exited the vehicle from the rear seat, the juvenile was wearing a green face mask, "like a zip-up." D.S. further testified that he did not have any issues with the juvenile before December 4th, but he (D.S.) may have been in another fight with someone else prior to that date.

Detective Cook explained that he showed a single photograph to D.S. and not a six-person lineup because D.S. went to school with the suspect. Detective Cook testified that D.S. wrote on the photograph that he was one hundred percent sure of his identification.

JPSO Detective Daryl Salaun, a school resource officer at Strehle, testified that on December 4, 2023, the principal came to his office and told him that there was a fight between J.F and G.H. Detective Salaun provided

commentary on the surveillance video of the fight at school, which was entered into evidence, as it played during the adjudication. The video showed the fight occurred at 1:38 p.m. The fight started inside of a classroom and moved outside of the classroom, after which a coach separated J.F. and G.H. Detective Salaun thereafter escorted J.F. to his office and observed that he sustained a bloody nose from the fight.

Detective Salaun identified a surveillance video that showed the students picking up their cell phones at the end of the day. He also identified J.F. in a video of the school's vestibule by the bus pick-up lanes, and pointed out that he was wearing a green hoodie while walking out of the school. He further identified still photographs of J.F. in a green hoodie from the vestibule video. Detective Salaun testified that another surveillance video showed the juvenile leaving school, running toward Margie Street at 3:13 p.m., and taking a left on Margie. The video also showed a maroon vehicle drive up from Millie Drive and take a right-hand turn on Margie at 3:14 p.m.[2] He did not recognize that vehicle. Detective Salaun testified that he was outside at the time of the recording and observed what the video depicted.

While he was outside, Detective Salaun observed that J.F. was irritated, shaking his leg, and upset, probably because of the fight he had just gotten into. He had also previously observed J.F. on his cell phone inside the building. Detective Salaun testified that after J.F. left the school, he subsequently heard gunshots. He then went to the scene, met the Third District deputies, and saw D.S., who had been shot in his hand. He further testified that D.S. stated "Johnny Boy" had shot him. Detective Salaun

___

[2] Detective Salaun also explained a map that was entered into evidence that showed Strehle School is located at the end of  Margie Drive where it intersects Millie Drive, and Ursula Drive is the next street over, running parallel to Millie Drive.

explained J.F. was called "Johnny Boy" at school. Before the shooting, the detective saw D.S. walking home with K. and P.

JPSO Detective Jeffery Jobin also responded to the scene on Ursula Drive on December 4, 2023. He testified that he assessed the scene and found five shell casings in the middle of the roadway. He explained that there were three shell casings on one side of the street and two shell casings on the other side. Detective Jobin asserted that, in his experience, the fact that there were shell casings on both sides of the street indicated that the shooter moved while he was shooting.

The juvenile court accepted Joel O'Lear, a forensic scientist in the JPSO crime lab, as an expert in the field of firearms and toolmark examination. He testified that he received five, 9 mm cartridge casings to examine in relation to the instant case, and determined that they were all fired from the same firearm. Mr. O'Lear stated that he also received a projectile (bullet), and he determined it to be most consistent with .38 caliber class ammunition, which includes a 9 mm. Mr. O'Lear concluded that the class of firearms the projectile was fired from matched the class of firearms that produced the five spent shell casings.

At the end of the adjudication hearing, the juvenile court adjudicated J.F. delinquent of attempted second degree murder (count three) and illegal possession of a handgun by a juvenile (count four). The court found that the juvenile was not delinquent on counts one and two. In June 2024, a disposition hearing was held, and the court committed J.F. to three years in secure care on count three and six months on count four, with both dispositions to run concurrently. A few days later, the court granted his timely motion for appeal.

## ASSIGNMENT OF ERROR

**The evidence was insufficient to establish the identity of J.F. as the perpetrator of the offenses.**

The juvenile's appellate counsel argues that the evidence was insufficient to support his adjudication. She contends that although D.S. named J.F. as the shooter, his identification was without evidentiary basis upon which the trier of fact could judge its validity. She further contends that the shooter was masked, and D.S. did not mention any distinguishing features to support his belief that J.F. shot at him. Counsel argues that the judge committed manifest error when she substituted her own opinion, which directly contradicted the testimony of D.S., and concluded that D.S. misspoke when he twice described the zippered mask that the shooter wore. Counsel also noted that the judge said, without support, that the pullover sweatshirt J.F. wore was pulled up over his face.

Additionally, counsel avers that the court failed to recognize that there was no motive for the shooting. D.S.'s cousin was involved in a fight with J.F., and D.S. was not involved. Counsel states that D.S. only knew J.F. peripherally and testified that he had never even spoken to J.F. Counsel also avers that the court did not consider that, based on D.S.'s admission to being involved in another fight that took place earlier, another student had a motive to shoot at D.S.

The State responds that this court should affirm the delinquency adjudication and disposition. It asserts D.S. said that the perpetrator was wearing a garment "like" a zippered facemask, not an actual facemask; J.F. does not deny on appeal that he was wearing a green pullover hoodie; and the trial court's factual findings were specifically based on its observations of "the victim's in-court demeanor and gestures," which the appellate court should afford great deference to upon review.

## LAW AND DISCUSSION

In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In a juvenile delinquency proceeding, the State's burden of proof is the same as in a criminal proceeding against an adult, to prove beyond a reasonable doubt every element of the offense alleged in the petition. *State ex rel. D.W.*, 09-855 (La. App. 5 Cir. 9/14/10), 47 So.3d 1048, 1053.

> In addition, La. Const. art. V, § 10(B) mandates that an appellate court review both law and facts when reviewing juvenile adjudications. 'While delinquency proceedings may in many ways implicate criminal proceedings, sometimes even mimicking them, they are nonetheless civil in nature.' *State in the Interest of D.R.*, 10-0405, p. 5 (La. App. 4 Cir. 10/13/10), 50 So.3d 927, 930. Therefore, as in the review of civil cases, a factual finding made by a trial court in a juvenile adjudication may not be disturbed by an appellate court unless the record evidence as a whole does not furnish a basis for it, or it is clearly wrong. *State in Interest of K.G.*, 11-1559, p. 4 (La. App. 4 Cir. 3/21/12), 88 So.3d 1205, 1207, *citing State in the Interest of Batiste*, 367 So.2d 784 (La. 1979); *State in the Interest of S.S.*, 557 So.2d 407 (La. App. 4th Cir. 1990); *State ex rel. E.D.C.*, 39,892 (La. App. 2 Cir. 5/11/05), 903 So.2d 571.

*State ex rel. S.C.*, 21-468 (La. App. 4 Cir. 11/29/21), 332 So.3d 169, 174. In juvenile proceedings, the scope of review on appeal extends to both law and facts. *See* La. Const. art. V, § 10(B); *State in Int. of H.D.*, 23-84 (La. App. 5 Cir. 6/28/23), 368 So.3d 266, 271, *writ denied*, 23-1026 (La. 12/19/23), 375 So.3d 415. The "clearly wrong-manifest error" standard of review should be used to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt. *Id.; State ex rel. S.C.*, supra.

> In addition to proving the statutory elements of the charged offense, the State is required to prove the identity of the perpetrator. *State v. Searls*, 04-790 (La. App. 5 Cir. 1/25/05), 895 So.2d 40, 43. The State is required to negate any reasonable probability of misidentification in order to carry its burden of proof when the key issue is identification. *Id.* Positive identification by one witness is sufficient to support a conviction. *State v. Benoit*, 07-35 (La. App. 5 Cir. 5/29/07), 960 So.2d 279, 282.

*State ex rel. S. L.*, 11-883 (La. App. 5 Cir. 04/24/12), 94 So.3d 822, 831.

The rule as to circumstantial evidence is that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. This is not a separate test from the *Jackson* standard, but rather provides a helpful basis for determining the existence of reasonable doubt. *State v. Wooten*, 99-181 (La. App. 5 Cir. 6/1/99), 738 So.2d 672, 675, *writ denied*, 99-2057 (La. 1/14/00), 753 So.2d 208. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. *Id.*

In the instant case, the juvenile was adjudicated delinquent for attempted second degree murder, in violation of La. R.S. 14:27, and La. R.S. 14:30.1 (count three) and illegal possession of a handgun by a juvenile, in violation of La. R.S. 14:95.8 (count four). On appeal, the juvenile argues that the evidence was insufficient to establish his identity as the perpetrator of the offenses.

Encompassed within proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. *State v. Pike*, 18-538 (La. App. 5 Cir. 5/8/19), 273 So.3d 488, 494, *writ denied*, 19-927 (La. 2/10/20), 292 So.3d 60.

To prove the identity of J.F. as the perpetrator, the State introduced the following evidence: D.S. testified that he and J.F. went to the same school starting in November 2023; he saw J.F. around school and they had mutual friends; he witnessed his cousin and J.F. fight at school; he left school at approximately 3:10 p.m.; and as he was walking home, a maroon vehicle pulled up, and J.F. exited the vehicle, pulled out a gun, and shot him in the wrist. Also, D.S. testified that when the juvenile exited the vehicle from the rear seat, the juvenile was wearing a green face mask, "like a zip-up." Both D.S. and Detective Cook testified that D.S. positively identified J.F. as the shooter from a photograph, and D.S. wrote that he was one hundred percent sure of his identification.

Detective Salaun testified that he had a good relationship with J.F. After the December 4, 2023 fight, J.F. sat in the detective's office for an hour or two. Detective Salaun described surveillance videos that showed the students picking up their cell phones at the end of the day and J.F. wearing a green hoodie, walking out of the school, then running toward and making a left on Margie Drive at 3:13 p.m. The video also showed a maroon vehicle drive up Millie Drive and take a right-hand turn on Margie Drive at 3:14 p.m.

Detective Salaun also heard the gun shots and went to the scene of the crime, where D.S. reported that "Johnny Boy" had shot him. Detective Salaun asserted that the juvenile was called "Johnny Boy" at school.

J.F.'s appellate counsel argues that the evidence was insufficient to prove that J.F. was the perpetrator, considering that the perpetrator was masked and that D.S. pointed to no distinguishing features for his identification. Counsel also asserts that the judge erred by finding that D.S. misspoke when he said that the green hoodie was zipped up and that J.F.'s sweatshirt was actually pulled up over his face.

The transcript reflects the following:

> Q. Okay. Do you remember what J.F. was wearing when he got out of the car?
> A. Yeah.
> Q. And what was he wearing?
> A. I don't remember the color of the jacket, but he was wearing a green mask, like a green mask. It was like a face mask like one you would zip up. It was one of those.
>
> ***
>
> THE WITNESS:
> It was like one of them masks you like put on your head and you zip up like right here (indicating). It was like a zip-up. It was a green mask.

The record also reflects that when the trial judge adjudicated the juvenile delinquent, she stated in pertinent part:

> I do believe that based on the situation that day with the fight at school, with the video of the defendant running out of the school, the car showing up, with the resource officer hearing the shots, it all happened just so quickly that it proved the case very clearly to me.
>
> While the victim D.S. indicated that there was a mask, I believe that he misspoke. At the time that he was doing it, he was using his hands to show how the hoodie came up. He was nervous. I think that he said the wrong wording. He did say a zipper. It was clear in the picture that there was no zipper, but a lot of those have zippers. And I believe that he was very clear in who he described and that he saw the defendant that day do this.

The judge thought that D.S. misspoke when he said that the green mask had a zipper after considering his nervousness and interpreting his hand gestures during his testimony.

> In assessing the reliability of eyewitness identifications when reviewing the sufficiency of the evidence, Louisiana courts apply the five factors set forth by the United States Supreme Court in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), which are as follows: (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the perpetrator; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the identification.

*Pike*, 273 So.3d at 495.

Although appellate review of juvenile cases extends to law and fact, the juvenile judge observes the conduct and demeanor of the witnesses and is in a far better position to determine credibility and weigh the evidence. *State in Int. of D.S.*, 11-416 (La. App. 5 Cir. 12/28/11), 83 So.3d 1131, 1136. Thus, the appeals court should afford great deference to the judge's findings of fact and to the judge's determination of witness credibility and weight to be given their testimony. *Id*. Also, a positive identification by only one witness may be sufficient to support a defendant's conviction. *Id*. at 1137.

To sum, according to the evidence, the following occurred within two hours on the afternoon of December 4, 2023: D.S. observed his cousin and J.F. fighting at school; a maroon vehicle pulled alongside of D.S. and his cousins while they were walking home; someone jumped out of the rear driver's side seat and began shooting at D.S.; one of the several shots fired traveled through D.S.'s wrist; and D.S. identified as J.F. as the shooter at the scene immediately after the incident.

Further, both D.S. and Detective Salaun testified that J.F. wore a green hoodie that day. Detective Salaun also observed J.F.'s agitated state as he left the school grounds, and the maroon vehicle and J.F. converging on each other. Detective Salaun heard gunshots moments later and D.S. told law enforcement minutes after he was shot that "Johnny Boy [J.F.'s nickname]" shot him. D.S. later positively identified a photograph of the juvenile as the perpetrator, and wrote that he was one hundred percent sure of his identification. D.S. believed that the juvenile was wearing a green mask "like a zip-up" at the time of the offense. Also, D.S. knew the juvenile from school and was familiar with him.

Upon review of the record, and all of the evidence presented at trial, and despite counsel's argument regarding the juvenile court's findings with

respect to the green hoodie, we find that a rational trier of fact could have found that the evidence was sufficient under the *Jackson* standard to show that the juvenile was the perpetrator of the offenses and that the State negated any reasonable probability of misidentification in order to carry its burden of proof. The judge did not clearly err and was not manifestly wrong when she adjudicated J.F. delinquent based on her assessment of reliability of D.S.'s eyewitness identification considering the *Manson* factors, and the strong circumstantial evidence provided by the school resource officer's testimony. *See Pike*, 273 So.3d at 495.

Accordingly, we find this assignment of error is without merit.

### *ERRORS PATENT*

The record was reviewed for errors patent.[3] La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990).

According to the transcript, the judge stated, "**An** application for post-conviction relief, including an application for an out-of-time appeal shall be considered if it is filed more than two years after the judgment of adjudication and disposition have become final under the provisions of Louisiana Code of Criminal Procedure Article 914 or 922." (Emphasis added). "An" was used at the beginning of the sentence instead of "**No**." As such, it appears J.F. received an incorrect advisal of the two-year prescriptive period for seeking post-conviction relief as mandated by La. C.Cr.P. art. 930.8. In a juvenile case, such notice should be given. *See State in Int. of*

---

[3] The Louisiana Children's Code is silent as to whether an error patent review is mandated in a juvenile appeal, although this Court has conducted limited reviews for errors patent in the past. *See, e.g, State in the Int. of Z.S.*, 01-1099 (La. App. 5 Cir. 2/26/02), 811 So.2d 1003, 1008. La. Ch.C. art. 104 provides that, in the absence of procedures prescribed by the Children's Code, the Louisiana Code of Criminal Procedure shall apply. This Court is thus authorized by La. C.Cr.P. art. 920 to conduct a review for errors patent. *State in Int. of T.W.-D.*, 24-136 (La. App. 5 Cir. 6/18/24), 391 So.3d 767, 774 n.11.

*B.D.*, 13-760 (La. App. 5 Cir. 4/23/14), 140 So.3d 308, 313, *writ denied*, 14-1093 (La. 1/9/15), 157 So.3d 597.

Therefore, by way of this opinion, the juvenile is advised that no application for post-conviction relief, including an application for an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of adjudication and disposition have become final under the provisions of La. C.Cr.P. arts. 914 or 922. *See State in Int. of T.W.-D.*, 391 So.3d at 776.

### ***DECREE***

Based on the foregoing, the juvenile's adjudications as delinquent and subsequent dispositions are affirmed.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **OCTOBER 18, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 24-KA-386

**E-NOTIFIED**
JUVENILE COURT (CLERK)
HONORABLE JENNIFER G. WOMBLE (DISTRICT JUDGE)
MATTHEW R. CLAUSS (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          KATHERINE M. FRANKS (APPELLANT)

**MAILED**
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053