Judgment rendered December 17, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,704-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                              Appellee

versus

ERIC STEPHEN ELLIOT                           Appellant

* * * * *

Appealed from the
Second Judicial District Court for the
Parish of Jackson, Louisiana
Trial Court No. 53,164

Honorable William R. "Rick" Warren, Judge

* * * * *

LOUISIANA APPEALS AND WRIT SERVICE     Counsel for Appellant
By: Holli Ann Herrle-Castillo
    Michael A. Mitchell
    Remy Voisin Starns

DANIEL W. NEWELL                              Counsel for Appellee
District Attorney

J. CLAY CARROLL
PERRIN NELSON SMITH, JR.
Assistant District Attorneys

* * * * *

Before STONE, STEPHENS and ROBINSON, JJ.

**STONE, J.**

This criminal appeal arises from the Second Judicial District Court, the Honorable Rick Warren presiding. Eric S. Elliot ("Elliot") was charged by bill of information on November 7, 2023, with one count of possession with intent to distribute a schedule II CDS, methamphetamine, in violation of La. R.S. 40:967(A)(1). That same day, he entered a plea of not guilty and a status conference was scheduled. On January 31, 2024, Elliot declined a plea offer from the state, and the state amended the bill to reflect the amount of methamphetamine was an aggregate of 28 grams or more. Elliot pled not guilty to the amended charge. On April 2, 2024, a motion to suppress the evidence was heard and denied. On May 6, 2025, Elliot withdrew his former plea of not guilty and pled guilty as charged pursuant to *State v. Crosby*, 338 So. 2d 584 (La. 1976) (i.e., reserving his right to appeal the trial court's denial of his motion to suppress). The state advised at that time it would not file a habitual offender bill against Elliot. The trial court then sentenced Elliot to ten years at hard labor. On May 12, 2025, a written motion for appeal was filed and granted.

## FACTS AND PROCEDURAL HISTORY

This appeal concerns only the trial court's denial of a motion to suppress. The facts are developed from the testimony of Deputy Chris Tippen ("Dpty. Tippen") at the hearing on the motion to suppress, which was held on April 2, 2024.[1]

---

[1] He testified that he had been in law enforcement since 2005.

On October 1, 2023, Dpty. Tippen was dispatched to the Murphy USA gas station (in Jonesboro) after the gas station attendant reported a black truck parked at a pump with the gas nozzle in the vehicle for an extended period of time. The deputy arrived at the station at approximately 6AM where he saw a black truck parked at a gas pump. It was still "a little dark" outside at this time, and the windows of the vehicle were dark in tint. Dpty. Tippen illuminated the windshield with his flashlight and observed that Elliot was in the driver's seat and was alone. According to the deputy, Elliot's "whole body was shaking." Dpty. Tippen, concerned it was a medical emergency, opened the driver-side door and spoke to Elliot. Dpty. Tippen observed that Elliot was sweating profusely, and his pupils were dilated; based on his experience in law enforcement, the deputy inferred that "obviously" Elliot was intoxicated on "something." Dpty. Tippen asked Elliot to step out of the vehicle. Elliot "acted real nervous" and asked why Dpty. Tippen wanted him to step out of the vehicle, but eventually Elliot complied. When Elliot stepped out, the deputy asked if he could search the vehicle. At first, Elliot gave permission, but as Dpty. Tippen went to make entry, Elliot withdrew his permission. Elliot admitted that he had driven to the gas station and asked if he could leave. Concerned that Elliot was impaired and might try to leave, Dpty. Tippen detained him, asked him if he had anything illegal inside his vehicle, and called for a canine team.

Deputy Blundell ("Dpty. Blundell") of the canine team arrived within five minutes, and the dog alerted on the vehicle. Dpty. Blundell opened the front passenger door and observed a clear plastic ziplock bag containing suspected methamphetamine in plain view on the seat. A separate bag with a smaller amount of methamphetamine and a bag of marijuana were located in

2

the console.  After reviewing the report, Dpty. Tippen testified the larger bag of methamphetamine weighed 7.5 ounces and the other weighed 8 grams, i.e., nearly half a pound of methamphetamine.

On cross-examination, Dpty. Tippen admitted: (1) he had not seen the bag of methamphetamine on the passenger seat when he first shined his light in the truck nor when he initially opened the truck door; (2) Elliot was not trespassing and a run of his license plate revealed his vehicle was not reported stolen; (3) Elliot had not committed a crime at this point; (4) he was concerned about impairment or a possible medical issue because Elliot's body was shaking or trembling as if he were having a seizure; and (5) once Dpty. Tippen opened the truck door, he realized there was no medical emergency and did not observe any narcotics.

## ARGUMENTS

On appeal, the defense makes the following factual argument:

> The deputy assumed Elliot had committed DWI, because he was the only one present in the vehicle at the time and said he had driven to the gas station. However, Tippen testified that he did not know if Elliot had been intoxicated when he drove to the gas station and had no evidence to support the inference that Elliot had driven on the highway while intoxicated but believed based upon his appearance that he was under the influence at the time he spoke to him.

From this premise, the defense concludes:

> The methamphetamine found inside the appellant's truck should have been suppressed. The testimony did not establish reasonable suspicion that evidence relating to the appellant's intoxication would be found inside the truck to justify the warrantless search, nor did it establish any other exception to the warrant requirement.
> …
> Because the testimony did not establish probable cause that evidence would be found inside the truck, nor were

there exigent circumstances justifying the warrantless search, the motion to suppress the evidence should have been granted.

The prosecution responds — as the district court found — that Dpty. Tippen's initial entry into the vehicle was justified as a welfare check, as it appeared that Elliot was having a medical emergency as he sat in the truck trembling after having been at the gas pump for such an inordinate amount of time that it caused the gas station clerk to call police. Dpty. Tippen testified that Elliot admitted he drove to the gas station and expressed a desire to leave in his vehicle. Accordingly, the prosecution argues that Dpty. Tippen was justified as a matter of preventing suspected DWI (and the hazards associated therewith) in detaining Elliot long enough for the canine team to arrive. The state further argues that the canine's alert on the vehicle gave the officers probable cause to believe that drugs were inside the vehicle.

**ISSUES**

1. Did the detention of Elliot pending the dog sniff constitute an unlawful arrest or detention?

2. If not, was the warrantless search of the vehicle justified by one of the exceptions to the warrant requirement?

**LAW AND ANALYSIS**

The right of every person to be secure in his person, house, papers, and effects against unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution. Generally, if evidence against a criminal defendant was derived from an unconstitutional search or seizure, the proper remedy is

4

exclusion of the evidence from trial. *State v. Riggs*, 55,736 (La. App. 2 Cir. 7/23/25), 416 So. 3d 45, 52. The object of a "seizure" may be a thing or a person.

*Seizure of a person.* There are two degrees of seizure: (1) mere detention, which is justified by reasonable suspicion; and (2) arrest, which is justified only by probable cause — a higher standard than reasonable suspicion — but still less than preponderance.

In analyzing a seizure of a person, there are two determinations to be made: (1) whether it was an arrest or a mere detainment; and (2) whether the requisite justification existed. For a detention to be constitutional at its inception, the officer must have at least a reasonable suspicion that criminal activity is afoot. This comes from *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879 (1968). Therein, the court defined "reasonable suspicion" necessary for detaining a person as follows:

> the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion…[I]n making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?

*Id.* (The *Terry* court thus used the word "reasonable" twice in its definition of reasonable suspicion.) In determining whether a detention was justified by reasonable suspicion, courts "must look at the 'totality of the circumstances' of each case," a process which "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266,

5

273, 122 S. Ct. 744, 750–51, (2002). The assessment by a reviewing court of the cumulative information known to the officers avoids a "divide-and-conquer analysis" by which the whole becomes less than the sum of its parts because each circumstance examined individually may appear "readily susceptible to an innocent explanation." *Id.* Furthermore:

> Reasonable suspicion for an investigatory stop is something less than probable cause for arrest. This review is an objective inquiry into the totality of the circumstances surrounding the encounter, and calls for consideration of whether the facts available to the officer at the moment of the seizure...warrant *a man of reasonable cause* in the belief that the action taken was appropriate. (Internal citations and quotation marks omitted)(emphasis in original).

*State v. Dupart*, 19-0521 (La. App. 4 Cir. 10/16/19), 280 So. 3d 1214, 1219–20.

Reasonable suspicion is necessary at the inception of the detention; thereafter, the officer must act diligently to confirm or dispel the suspicion. There is no bright line for determining how long a detention may last before it becomes a de facto arrest. "A suspect's inability to leave merely establishes whether a 'seizure' has occurred, not whether a seizure was of the *Terry* stop or arrest variety. Rather, the determination of whether a detention exceeds the bounds of a *Terry* stop is a fact-intensive inquiry." *State v. Turner*, 13-0180 (La. 3/1/13), 108 So. 3d 753. (Internal citations omitted.) In that case, the officer had reasonable suspicion that the defendant was a drug courier and detained the defendant for an hour in a private office (in handcuffs) while waiting for the canine unit to sniff the defendant's luggage. The Louisiana Supreme Court classified the detention as an investigatory stop, stating:

> In assessing the effect of an investigatory detention's duration, the United States Supreme Court and this Court have focused on the diligence of the detaining officer(s):
>> In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second guessing.
>
> *U.S. v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *Miller,* 00–1657 at p. 3, 798 So. 2d at 948 (quoting *Sharpe*). The transcript from the suppression hearing indicates the officer summoned the K–9 unit contemporaneously with or very soon after bringing the defendant into the private office. The 60–minute delay was, therefore, not attributable to any lack of diligence on the part of the officer.
>
> Although a 60–minute detention is certainly not brief, Louisiana courts have upheld detentions of similar duration when the detaining officers diligently pursued their investigation.
>
> *E.g., Miller,* 00–1657 at p. 5, 798 So. 2d at 951 (Court upheld 53–minute detention where officers acted diligently in summoning K–9 unit to search vehicle suspected of transporting marijuana); *State v. Burney,* 47,056, pp. 11–12 (La. App. 2 Cir. 5/23/12), 92 So. 3d 1184, 1192–93 (extension of lawful traffic stop by approximately 43 minutes from the time defendant refused consent to search of vehicle to the K–9 unit's arrived was justifiable); *State v. Romsky,* 01–1067, p. 10 (La. App. 5 Cir. 4/10/02), 817 So. 2d 186, 192 (60–minute detention justifiable where officer called K–9 unit within 5 minutes of stopping vehicle suspected of transporting narcotics).

*State v. Turner*, *supra.* Application of these principles is well illustrated in *Rodriguez v. United States*, 575 U.S. 348, 135 S. Ct. 1609 (2015). There, the officer stopped the defendant's vehicle for driving on the shoulder. The officer completed the traffic stop and issued a citation in about 21 minutes. However, the defendant was detained for an additional eight minutes, waiting for a second officer to arrive in order to conduct a dog sniff around

the defendant's car. The Supreme Court held that, absent further reasonable suspicion, police may not extend an otherwise-completed traffic stop in order to conduct a free-air dog sniff. *Id.*

There must be *probable cause* to support an arrest, whether it is formal or de facto. If a mere detention progresses to an arrest, there must be probable cause for the arrest during and in the moment immediately preceding the arrest; otherwise, the arrest is unlawful and the exclusionary sanction potentially bars evidence derived from the arrest. In *Illinois v. Gates,* 462 U.S. 213, 103 S. Ct. 2317 (1983), the United States Supreme Court enunciated a "totality of the circumstances" analysis in determining whether probable cause exists and described probable cause as a "fair probability." Louisiana courts have followed that approach and have stated that "[p]robable cause to arrest exists when the facts and circumstances within an officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a person of average caution in the belief that the accused has committed an offense." *State v. Gates,* 13-1422 (La. 5/7/14), 145 So. 3d 288, 294; *State v. Wood,* 457 So. 2d 206, 208 (La. App. 2 Cir. 1984). However, probable cause is less than a preponderance of the evidence:

> the legality of the arrest must be upheld if the officers had probable cause to believe that he "had committed or was committing an offense." The arresting officer need only know with "fair probability" that the defendant committed the felony, which requires more than a "bare suspicion" but less than a preponderance of evidence. (Internal citations omitted.)

*United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001).

*Search of vehicle.* The lawful owner or custodian of a vehicle has a recognized right to privacy in the vehicle. *State v. Jewell,* 338 So. 2d 633

8

(La. 1976). Thus, if police enter a vehicle, it constitutes a "search" within the meaning of the Fourth Amendment to the United States Constitution and Louisiana Constitution Article I, § 5. *State v. Robinson,* 52,974 (La. App. 2 Cir. 3/18/20), 293 So. 3d 193, 201–02, *writ denied*, 20-00525 (La. 10/20/20), 303 So. 3d 315. It is well settled that a search and seizure conducted without a warrant issued on probable cause is *per se* unreasonable unless the warrantless search and seizure can be justified under one of the narrowly drawn exceptions to the warrant requirement. *State v. Thompson,* 02-0333 (La. 4/9/03), 842 So. 2d 330; *State v. Tatum,* 466 So. 2d 29 (La. 1985); *State v. Manning,* 50,591 (La. App. 2 Cir. 5/18/16), 196 So. 3d 626*, writ denied,* 17-1575 (La. 5/18/18), 242 So. 3d 575; *State v. Lawrence,* 45,061 (La. App. 2 Cir. 3/3/10), 32 So. 3d 329*, writ denied,* 10-0615 (La. 10/8/10), 46 So. 3d 1265*. However, a drug dog's "free air sniff" around a vehicle does not constitute a search of the vehicle, and its alert on the vehicle constitutes probable cause to search the vehicle for drugs:

> The use of a drug dog as a means of investigation is one way to confirm or dispel the officer's reasonable suspicion. A dog sniff of the vehicle's exterior surfaces is not a "search" under the meaning of the Fourth Amendment. However, at the moment the dog alerts to the interior of the vehicle, officers have probable cause to search a vehicle. (Internal citations omitted.)

*State v. Manning*, *supra*.

Nonetheless, probable cause alone does not legally justify a warrantless search. Two exceptions to the warrant requirement are relevant here: (1) search incident to arrest; and (2) the automobile exception.

The automobile exception to the warrant requirement requires both: (1) exigent circumstances; and (2) probable cause to believe there is evidence of crime in the vehicle. *State v. Crawford*, 17-0025 (La. 2/24/17),

9

210 So. 3d 268. The ready mobility of a vehicle has been held to be an exigent circumstance. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, (1970). *State in Int. of T. L.*, 17-579 (La. App. 5 Cir. 2/21/18), 240 So. 3d 310, 328, further explains:

> The automobile exception allows police to search a vehicle without a warrant if a car is readily mobile and probable cause exists to believe it contains contraband. The Louisiana Supreme Court has explained that the inherent mobility of a vehicle and the risk of losing evidence because of this mobility have prompted courts to allow police to conduct an immediate warrantless search with probable cause.

Additionally, *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710 (2009), allows officers to search a vehicle incident to the arrest of a recent occupant if: (1) it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle; and/or (2) the arrestee is unsecured and within lunging distance of the passenger compartment at the time of the search.

In this case, the defendant's expressed desire to leave in his vehicle notwithstanding his apparent intoxication justified further detention. Dpty. Tippen had, at a minimum, reasonable suspicion that Elliot's doing so would have constituted DWI and endangered public safety. As Dpty. Tippen would have known from having been a police officer for approximately 18 years, Elliot's symptoms indicated that Elliot was "tweaking on meth"[2]: nervousness, trembling, profuse sweating, pupil dilation, and "falling asleep" while pumping gas. When the apparently "tweaking" Elliot asked permission to drive away in his vehicle, Dpty. Tippen had to either arrest Elliot then and there for DWI or public intoxication or detain him, at least

---

[2] This is slang for being intoxicated on methamphetamine, a powerful stimulant. It is not a direct quote; rather, the court uses this slang for the sake of realism.

until the dog sniff. Said sniff would either confirm or dispel the suspicion that — since Elliot seemed to be "tweaking" on methamphetamine — there was methamphetamine in the vehicle. The canine unit arrived within five minutes of Dpty. Tippen's call. There was reasonable suspicion that Elliot had already committed DWI and was about to commit DWI again; such was sufficient to justify this detention. (The mere possibility that Elliot waited until he arrived at the gas station before partaking does not negate reasonable suspicion as to him committing DWI on the way to the gas station.) It was also reasonable to suspect that evidence of whatever drug Elliot had imbibed may have been found in the vehicle.

However, the conclusion that the detention of the defendant pending the dog sniff was justified does not end the inquiry. It merely establishes that the evidence was not the product of an unlawful arrest. It does not establish justification for the warrantless search of the vehicle. Such justification nevertheless did exist. The dog's alert on the vehicle provided probable cause to search the vehicle and, in light of Elliot's tweaking-type behavior, probable cause to arrest Elliot for possession of CDS and for DWI. Therefore, under *Gant*, *supra*, the officers had the right to search the vehicle for "evidence of the offense[s] of arrest," i.e., the methamphetamine. Additionally, the fact that the suspected drugs were inside a readily mobile motor vehicle — with Elliot asking to drive away in it — makes the automobile exception applicable.

Finally, it must be pointed out that the defendant's argument — that probable cause or reasonable suspicion (as applicable) did not exist because of Dpty. Tippen's subjective opinion described on cross-examination, i.e., that Elliot had "not committed a crime at that point" after Dpty. Tippen had

11

observed Elliot's symptoms but before the drug dog alert — is fallacious. Whether legal justification for a search or seizure exists is a purely objective question. Thus, an officer may subjectively believe that he does *not* have probable cause when in fact he *does*. Regardless, the justification exists because:

> the settled rule [is] that the determination of reasonable grounds for an investigatory stop, or probable cause for an arrest, does not rest on the officer's subjective beliefs or attitudes but turns on a completely objective evaluation of *all* of [the] circumstances known to the officer at the time of his challenged action.

*State v. Kalie*, 96-2650 (La. 9/19/97), 699 So. 2d 879, 880.

## CONCLUSION

Elliot's conviction and sentence are **AFFIRMED.**

**AFFIRMED.**